728 N.E.2d 98 (2000)
312 Ill. App.3d 875
245 Ill.Dec. 367
In Interest of T.S. III, a minor (The People of the State of Illinois, Petitioner-Appellee,
v.
T.S., Respondent-Appellant).
In the Interest of J.W., et al., minors (The People of the State of Illinois, Petitioner-Appellee,
v.
A.F., Respondent-Appellant).
Nos. 3-99-0363, 3-99-0446.
Appellate Court of Illinois, Third District.
April 12, 2000.
*99 Phillip Pollock (Court-appointed), Peoria, for Troy Schwark.
Lawrence M. Solomon (Court-appointed), Peoria, for Ayissha Fitzpatrick.
John X. Breslin, Deputy Director, State's Attorneys Appellate Prosecutor, Ottawa, Kevin W. Lyons, State's Attorney, Peoria, Gary F. Gnidovec, State's Attorneys Appellate Prosecutor, Ottawa, for the People.
Michael A. Riley, Guardian Ad Litem, Peoria, for Troy Schwark, Jr.
Justice LYTTON delivered the opinion of the court:
The respondents, A.F. and T.S., appeal from an order of the circuit court of Peoria County finding them to be unfit parents and subsequently terminating their parental rights. The respondent-mother, A.F., was found unfit for failing to make reasonable progress or reasonable efforts toward the return of her children, J.W., A.T., E.T., R.T., L.F., and T.S. III. 750 ILCS 50/1(D)(m) (West 1996). The respondent-father, T.S., was found unfit based on a finding of depravity. 750 ILCS 50/1(D)(i) (West 1998). He is the father of T.S. III. Both parents appeal. We affirm.

I. PROCEDURAL HISTORY
On September 19, 1996, the State filed a juvenile petition alleging that six-day-old R.T. was neglected because he tested positive for cocaine at birth. The State also alleged that three-year-old J.W., two-year-old A.T., and one-year-old E.T. were neglected in that their environment was injurious to their welfare because R.T. was born with cocaine in his system. The respondent-mother admitted to the allegations in the petition and the minors were adjudicated neglected. A year later, the State filed another juvenile petition alleging that 10-day-old L.F. was neglected because the respondent-mother had previously been found unfit and there had been no subsequent finding of fitness.
On July 7, 1998, the State filed a petition to terminate the respondent-mother's parental rights. The State alleged that she was unfit for failing to make either reasonable efforts to correct the conditions which led to the removal of her children or reasonable progress toward the return of her children within 12 months after they had been adjudicated neglected. 750 ILCS 50/1(D)(m) (West 1998). On September 2, 1998, the State filed another juvenile petition alleging that two-day-old T.S. III was neglected because: (1) the respondent-mother had previously been found unfit without a subsequent finding of fitness; and (2) the respondent-father had a long criminal history and was currently imprisoned. The respondent-mother admitted to the allegations in the petition and T.S. III was adjudicated neglected.
*100 On October 5, 1998, the State filed a supplemental petition for termination of parental rights. The supplemental petition included T.S. III and again alleged that the respondent-mother was unfit for failing to make reasonable efforts or progress toward the return of her children. 750 ILCS 50/1(D)(m) (West 1998). The State alleged that the respondent-father was unfit on the basis of depravity. 750 ILCS 50/1(D)(i) (West 1998). In the petition the State included a list of the respondent-father's 18 prior offenses. Six of those offenses were felony convictions, and four of the six felonies had been committed within five years of the filing of the termination petition. An adjudicatory hearing for both parents was held on February 10, 1999.

II. RESPONDENT-FATHER

A. Facts
At the adjudicatory hearing, the court admitted certified copies of the respondent-father's criminal convictions into evidence. The respondent-father testified that he was currently incarcerated and his release date was May 20, 1999. He said that when he got out of prison he would prove that he could be a fit father and go through any necessary programs, get a job, and find a place to live. He said that he would not go back to a life of crime because he now has his son, T.S. III, who needed him. On cross-examination, the respondent-father admitted that he had three other children that he has no contact with. He said that he had been involved with the respondent-mother for four years and that he had never struck her.
Debra Stanley, a Lutheran Social Services caseworker, testified that within the past year, the respondent-mother came to a visit with a black eye. She initially told Stanley that she fell at work, but she later admitted that the respondent-father had struck her. This occurred while the respondent-mother was pregnant with T.S. III.
At the best interest hearing, the court found that T.S. III deserved more stability in his life and should not have to wait to see if his father turned his life around. Therefore, it terminated the respondent-father's rights.

B. Analysis
The respondent-father argues that the trial court erred in finding that he was depraved and therefore an unfit parent to T.S. III. He argues that while a series of criminal convictions may support a finding of depravity, those acts must establish by clear and convincing evidence that the respondent is deficient in a moral sense and has shown an inability or an unwillingness to conform to accepted moral standards.
A trial court's finding of unfitness will not be reversed unless it is contrary to the manifest weight of the evidence. In re Pronger, 118 Ill.2d 512, 115 Ill.Dec. 390, 517 N.E.2d 1076 (1987).
Historically, Illinois courts have held that a parent's history of criminal convictions, standing alone, was not sufficient evidence of depravity. In re Sanders, 77 Ill.App.3d 78, 32 Ill.Dec. 847, 395 N.E.2d 1228 (1979). However, in 1998, the Illinois legislature amended section 1 of the Adoption Act to provide that, in some cases, several prior felony convictions were sufficient to create a presumption of depravity. 750 ILCS 50/1(D)(i) (West 1998). Under the amended statute, a presumption of depravity exists:
"[I]f the parent has been criminally convicted of at least 3 felonies under the laws of this State or any other state, or under federal law, or the criminal laws of any United States territory; and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 1998).
Here, the respondent-father meets the current statutory definition of a depraved person. He had six prior felony convictions, and four of those convictions occurred *101 within five years of the filing of the petition to terminate his parental rights. Further, the record does not demonstrate that he rebutted this presumption of depravity. Although he testified that he was going to change when he got out of prison because T.S. III needed him, the evidence showed that he continued to commit crimes when he had three other children who presumably needed him. In addition, evidence was introduced that he had given T.S. III's mother a black eye while she was pregnant with him. For these reasons, we find that the trial court's finding of unfitness on this ground was not against the manifest weight of the evidence.
[Nonpublishable material removed under Supreme Court Rule 23.]
Accordingly, the judgment of the circuit court of Peoria County is affirmed.
Affirmed.
HOLDRIDGE and HOMER, JJ., concur.