797 N.E.2d 711 (2003)
343 Ill. App.3d 419
278 Ill.Dec. 116
In re DIANA L., n/k/a Diane E., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
James L., Respondent-Appellant).
No. 3-02-0814.
Appellate Court of Illinois, Third District.
August 29, 2003.
*712 Raymond J. Conklin (Court-appointed), Robertson & Conklin, Rock Island, for James A.L.
Lawrence M. Bauer, Deputy Director, State's Attorneys Appellate Prosecutor, Ottawa, Gregory McHugh, Mercer County State's Attorney, Aledo, Terry A. Mertel, State's Attorneys Appellate Prosecutor, Ottawa, for the People.
Presiding Justice McDADE delivered the opinion of the court:
The circuit court granted a juvenile petition for wardship, finding that the minor, Diana E., was sexually abused by respondent James L., her adoptive father. The State subsequently filed a petition to terminate parental rights. The court granted the State's petition, and respondent appeals. We are asked to determine whether: (1) the State's petition to terminate parental rights was defective on its face; (2) the finding of unfitness was contrary to the manifest weight of the evidence; and (3) the trial court abused its discretion in terminating his parental rights. We affirm.

FACTS
On April 19, 1999, the State filed a one-count juvenile petition for wardship, alleging that the minor, born July 6, 1986, had been sexually abused by respondent and taken into protective custody. Following an adjudicatory hearing, the court found the minor abused. The court subsequently entered a dispositional order granting the State's petition for wardship and awarding the Illinois Department of Children and Family Services (DCFS) temporary custody. Meanwhile, the State charged respondent with aggravated criminal sexual abuse in connection with his conduct toward *713 Diana between March 1998 and April 1999 (Mercer County court case No. 99-CF-28). On November 24, 1999, respondent was found guilty but mentally ill and sentenced to a five-year term of imprisonment.
On February 1, 2000, the State filed a supplemental petition to terminate respondent's parental rights. The petition alleged that respondent was unfit to have a child in that he (1) acted with extreme cruelty to the minor (750 ILCS 50/1(D)(e) (West 2000)); (2) committed other misconducti.e., aggravated criminal abuseupon the minor (750 ILCS 50/1(D)(h) (West 2000)); and (3) was incarcerated and would be unable to discharge his parental responsibilities for more than two years while the minor was in DCFS guardianship (750 ILCS 50/1(D)(r) (West 2000)). In its prayer for relief, the State asked the court to: (a) find respondent unfit; (b) forever terminate all of respondent's parental rights and any residual rights to the minor; and (c) appoint DCFS as the minor's guardian with power to consent to her adoption.
At the hearing on the supplemental petition, Diana E. testified that respondent and his wife, Sandra, were her foster parents for a year or more before Sandra died in the spring of 1998. A few days after Sandra's death, respondent started touching Diana's genitalia. At first, the touching was done through Diana's clothing. However, over time, respondent removed her clothes and touched her genitalia directly. Diana said the conduct took place in the basement, in the living room and in respondent's bedroom. It occurred six or eight times, the last time being the night before she was interviewed by the police. Respondent told her he loved her and not to tell anyone what he was doing. He told her that he and his sister did "intimate things" when he was a boy. Diana told no one about the conduct until the police interviewed her in the spring of 1999.
Respondent was the only other witness called by the State in its case-in-chief. Respondent testified that Diana was placed in his home for foster care in August 1997. He admitted that he had been convicted following a stipulated bench trial in case No. 99-CF-28 and that he served 2½ years in prison in that case. Respondent denied, however, that he was guilty of the offense charged. He further denied that the conduct Diana testified to in this case had occurred. Respondent said he must have been mistaken when he gave a statement to the police. He said he enrolled in a sex offender treatment program to address the sexual issues in this case only because the court ordered him to do so.
Michael L., respondent's 31-year-old adopted son, testified for respondent. Michael returned home to live with respondent and Diana immediately after Sandra's death. He said he stayed in the house because of medical problems and slept on a sofa bed in the living room. Michael said he never observed respondent doing anything inappropriate with Diana, and he never saw her unclothed.
Respondent, testifying on his own behalf, stated that Sandra died on March 4, 1998. He said Diana's birth father's parental rights were terminated in February 1998 and he adopted Diana after Sandra died. He said he agreed to a stipulated bench trial in case No. 99-CF-28 on the advice of his attorney. Respondent said he thought he would be released to return home without serving time in prison. Respondent was taking medication for mental illness at the time. When he went to see the police on April 19, 1999, respondent thought he was supposed to talk about Diana telling lies. He denied that he told the police he had fondled Diana's genitalia. *714 He said he signed blank sheets of paper at the police station.
In rebuttal, the State presented deputy sheriff Jonathan Weakley. Weakley testified that he and DCFS investigator Hector Vasquez interviewed respondent on April 16, 1999. At that time, respondent indicated that he may have touched Diana's genital area accidentally while wrestling with her. Three days later, respondent called the sheriff's office and said he wanted to talk. On that occasion, respondent told Weakley that he would not have molested Diana if his wife had been alive. Weakley gave respondent Miranda warnings, and respondent subsequently signed a written statement admitting that he had touched Diana's vaginal area four times. Weakley denied that the pages of the statement were blank when respondent signed them. He stated that he completed the statement by hand, wrote down respondent's answers and then asked respondent to sign the statement after he reviewed it. Respondent's written statement was admitted into evidence.
Following arguments of counsel, the trial court found clear and convincing evidence of unfitness by misconduct as alleged in the State's petition pursuant to section 1(D)(h) of the Adoption Act (750 ILCS 50/1(D)(h) (West 2000)). Accordingly, the court entered a finding of unfitness and set the cause for a best interest hearing.
On March 19, 2002, in anticipation of the hearing, Diana's caseworker, Lynn Lohman, submitted a report to the court. Diana had been placed in a traditional foster home, and she had expressed a desire to reunite with her birth father. She was frustrated by having to use the name respondent had given her and by the delay in terminating respondent's parental rights.
At the hearing, Lohman testified that respondent had telephoned her office to inquire about the possibility of having Diana returned to him. She said that there was no realistic chance that Diana would ever be returned to respondent's care. Lohman said she also had had conversations with Diana's birth father, Steve E., who sought to have Diana placed with him for potential adoption. Diana had visited with Steve E., and she told Lohman that she wished to have her name restored to Diana E. Lohman said that DCFS was actively pursuing placing Diana with Steve E. She recommended both that respondent's parental rights be terminated so that Diana could be freed for potential adoption by Steve E. and that her name be changed from Diane L. to Diana E., as she wished.
Respondent gave an unsworn statement. After arguments of counsel, the court reviewed the caseworker's report, the evidence of record and the statements of respondent and counsel. The court ultimately stated that it believed closure was needed to allow Diana to move forward in her life, and that it was in her best interest that respondent's parental rights be terminated. The court accordingly granted the State's supplemental petition and ordered the minor's name changed from Diane L. to Diana E.

ISSUES AND ANALYSIS

1. Defective Pleading
Respondent initially argues that the State's supplemental petition to terminate his parental rights was facially defective for failure to state in its prayer for relief that respondent could "permanently" lose his rights as a parent. Respondent contends that such language is mandated by section 2-13(4) of the Juvenile Court Act of 1987(Act) (705 ILCS 405/2-13(4) (West 2000)).
*715 This issue was recently resolved in In re Andrea D., 342 Ill.App.3d 233, 276 Ill.Dec. 793, 794 N.E.2d 1043 (2003) (Andrea D. II). Under procedural facts analogous to those before us today, the court in Andrea D. initially remanded the cause for the State's failure to include notice in its prayer for relief that the respondent could "permanently" lose his parental rights. See In re Andrea D., 336 Ill.App.3d 335, 270 Ill.Dec. 719, 783 N.E.2d 681 (2003) (Andrea D. I). The State appealed, and the supreme court issued a supervisory order directing the appellate court to determine whether the petition to terminate parental rights was governed by the procedure in section 2-13(4). In re Andrea D., 204 Ill.2d 655, 273 Ill.Dec. 403, 789 N.E.2d 303 (2003).
On remand, the court observed that there are two separate mechanisms for requesting the termination of parental rights. In expedited proceedings brought pursuant to section 2-13, where the petitioner seeks parental termination in an original juvenile wardship petition, the petitioner must provide explicit language to convey that the respondent parent stands to "permanently" lose parental rights. 705 ILCS 405/2-13(4) (West 2000). By contrast, where the State does not seek to terminate parental rights until after the minor has been adjudicated abused and made a ward of the court, the petition must be filed pursuant to section 2-29 of the Act (705 ILCS 405/2-29 (West 2000)). When the bifurcated procedure under section 2-29 applies, the petition need not include the explicit language that is required under section 2-13(4). Andrea D. II.
In this case, the State's supplemental petition to terminate respondent's parental rights was brought pursuant to section 2-29. Accordingly, the additional notice required for expedited petitions under section 2-13(4) did not apply. Andrea D. II.

2. Unfitness
Next, respondent argues that the State's evidence of unfitness was insufficient. He does not deny that the conduct described by Diana established unfitness under section 1(D)(h) of the Adoption Act (750 ILCS 50/1(D)(h) (West 2000)). He asks only that this court reassess the minor's credibility.
A trial court's finding of unfitness will not be reversed on review unless the finding is contrary to the manifest weight of the evidence. In re D.F., 201 Ill.2d 476, 268 Ill.Dec. 7, 777 N.E.2d 930 (2002). A determination is against the manifest weight of the evidence if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary or not based on the evidence presented. D.F., 201 Ill.2d 476, 268 Ill.Dec. 7, 777 N.E.2d 930. For purposes of this court's review, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the witnesses and to assess the evidence based on its observations. This court may not substitute its judgment for that of the trial court with regard to the credibility of witnesses, the weight assigned to the evidence and the inferences to be drawn. D.F., 201 Ill.2d 476, 268 Ill.Dec. 7, 777 N.E.2d 930.
Here, the trial court believed the testimony of Diana and disbelieved respondent's denials. The mere fact that Michael did not observe the conduct described by Diana is hardly surprising and does not compel a reversal of the trial court's finding of unfitness. The secrecy of sexual abuse is well documented. See People v. Dempsey, 242 Ill.App.3d 568, 182 Ill.Dec. 784, 610 N.E.2d 208 (1993). Diana testified clearly and consistently to multiple acts of sexual abuse by respondent, some of which were admitted in statements respondent gave to investigating authorities. We conclude, therefore, that the trial *716 court's finding of unfitness was not contrary to the manifest weight of the evidence.

3. Best Interest
In his last argument, respondent claims that the trial court erred in terminating his parental rights. He argues that his mental illness brought on by his wife's death was a sufficient mitigating circumstance to preclude the termination.
We note that the trial court, in rendering its decision at the close of the best interest hearing, was not unsympathetic to the grief respondent displayed as he faced the loss of his parental rights to Diana. Nevertheless, the court's overriding concern at a best interest hearing is the well-being of the child, not the parent. In re M.C., 197 Ill.App.3d 802, 144 Ill.Dec. 214, 555 N.E.2d 111 (1990). The relevant inquiry on review is whether the trial court's decision to terminate parental rights was an abuse of the trial court's discretion. In re V.O., 284 Ill.App.3d 686, 673 N.E.2d 439, 220 Ill.Dec. 527 (1996).
Evidence admitted at the best interest hearing established that there was no reasonable likelihood that respondent would ever regain custody of Diana. Diana required closure of her relationship with respondent and freedom to pursue a potentially beneficial relationship with her birth father. The court's determination that it was in Diana's best interest to terminate respondent's parental rights was not an abuse of discretion.

CONCLUSION
The judgment of the circuit court of Mercer County is affirmed.
Affirmed.
SLATER and SCHMIDT, JJ., concur.