SIXTH DIVISION

October 17, 2003

No. 1-03-0159

In re SHANNA W., a Minor

(The People of the State of Illinois,

Petitioner-Appellee,

v.

Dorothy W.,

Respondent-Appellant).

)))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Gregory O'Brien

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

After a hearing, the circuit court found that respondent, Dorothy W., was an unfit parent to her daughter, S.W., by reason of depravity, failure to make reasonable progress toward the return of the child, and repeated incarceration. 750 ILCS 50/1(D)(i),(D)(m),(D)(s) (West 2002).  Subsequently, after a best interests hearing, the court terminated Dorothy's parental rights.  We affirm.

Shanna W. was born on May 22, 2000.  Respondent is the biological mother of Shanna W.  Shanna's natural father's parental rights were terminated and he is not a party to this appeal.  Respondent was arrested on felony drug charges five days after Shanna was born.  She has remained incarcerated throughout the entire history of this case.

Respondent came to the attention of the Department of Children and Family Services (DCFS) on February 24, 1994, when she gave birth to Shaquita, who was cocaine exposed.
(footnote: 1)  On July 5, 1995, respondent gave birth to a son, Jericho, who was also exposed to cocaine.  On July 14, 1995, DCFS took custody of Shaquita, Jericho, and respondent's other daughter, Sherry.  On June 15, 1997, respondent gave birth to another daughter, Shanice, who was also drug-exposed.  DCFS took temporary custody of Shanice on June 27, 1997.

Respondent used cocaine two days before Shanna's birth and tested positive for cocaine when Shanna was born.  Shanna tested positive for syphilis at birth.  On May 30, 2000, Shanna was taken into protective custody.  On May 31, 2000, the State filed a petition for adjudication of wardship for Shanna.  The petition alleged that Shanna was abused and neglected because respondent tested positive for cocaine at Shanna's birth, had three other children born with cocaine in their systems and had four children in the custody of DCFS.

On June 1, 2000, and June 13, 2000, temporary custody hearings were held.  The juvenile court found probable cause to exist that Shanna was abused or neglected, and that it was a matter of immediate and urgent necessity to remove Shanna from the custody of respondent and place her temporarily in the custody of a DCFS guardianship administrator.

On December 20, 2000, the trial court conducted an adjudicatory hearing, during which evidence was presented through a stipulation of facts by all parties.  The court found that Shanna had been neglected due to an injurious environment and abused due to substantial risk of physical injury under the Juvenile Court Act of 1987. (705 ILCS 405/2-3(1)(b),2(ii) (West 2002)).  On that same date, the court conducted a dispositional hearing, adjudged Shanna a ward of the court, and appointed the DCFS guardianship administrator as her guardian with the right to place her.

Shanna is diagnosed with numerous special needs, including rigidity of the lower extremities, tibial torsion bilaterally and positional deformity of the feet with internal rotations.  Shanna receives speech therapy, developmental therapy, physical therapy, and occupational therapy.  She was placed in a foster home in July 2000 with foster parents who had previously adopted one of Shanna's siblings.

On October 15, 2001, the State filed a supplemental petition to terminate respondent's parental rights to Shanna.  The petition alleged, in relevant part, that respondent: (1) had failed to maintain a reasonable degree of interest, concern or responsibility as to Shanna's welfare; (2) had behaved in a depraved manner; (3) has been an habitual drunkard/and or addicted to drugs; (4) failed to make reasonable efforts and/or progress; and (5) was incarcerated at the time the termination petition was filed, had been repeatedly incarcerated and her repeated incarceration prevented her from discharging her parental responsibilities as to Shanna.

On September 16, 2002, the trial court commenced the unfitness portion of the trial.  The State began its case by entering into evidence a number of exhibits relating to respondent's older children and her felony drug convictions.  The exhibits admitted by the court included three termination orders, all dated November 10, 1999, for respondent's other children, Jericho, Shaquita and Shanice.  As to all three children, respondent was found unfit on the same grounds -- failure to maintain a reasonable degree of interest, and failure to make reasonable efforts and progress under the Adoption Act. 750 ILCS 50/1(D)(West 2002).  The trial court then admitted the certified statements of conviction for respondent which established that she has five felony convictions for drug offenses and has been incarcerated three times.

As its first witness, the State called Wendy Barnoski.  Barnoski testified that she was employed by the Children's Home and Aid Society of Illinois when she was assigned Shanna's case in May 2001.  She testified that respondent was taken into custody five days after Shanna was born.  Respondent has not had custody of Shanna since May 27, 2000, after Shanna was taken into protective custody.  Thereafter, Shanna has been in the care and custody of her two foster parents.  Shanna has special needs in that she requires physical therapy, developmental therapy, speech therapy and occupational therapy.  Shanna is also taking medication and is being monitored for low iron levels.  Shanna's foster mother has received ongoing education from Shanna's various therapists.  The foster mother is required to practice some of the words that were taught to Shanna, follow-up with the therapy sessions, which includes exercise for physical therapy needs, and to keep in contact with the four therapists as well as the service coordinator.

Barnoski testified that she did not believe that a person would be able to take care of a child who has Shanna's special needs without these special classes or special training.  Shanna's general daily needs include routine care and transportation to day care.  Barnoski opined that respondent would not be able to fulfill Shanna's special needs.  She testified that respondent's incarceration has affected her ability to care for Shanna on a daily basis.  Because respondent has never had custody of Shanna, she has not become familiar with Shanna's medical or therapeutic needs.  Barnoski testified that she did not believe that respondent has the knowledge to care appropriately for someone who has the severe therapeutic needs that Shanna has.

Barnoski testified that her agency had previously recommended the permanency goal of substitute care pending court termination of parental rights.  This recommendation had been based upon the fact that Shanna was residing in adoptive placement with her sister, who had already been adopted, and that she was very bonded to the foster parent,
(footnote: 2) Mrs. R.  In addition, respondent had a date of November 2003 at which time she would get out of prison, yet, at that time, she had not completed any services.

Barnoski testified that she had an opportunity to evaluate respondent's progress in reunifying with Shanna by looking at the services respondent had completed while incarcerated.  However, Barnoski was not able to evaluate what respondent might have learned or gained from the education because that information was not provided to her from the correctional center.  Barnoski testified that she did have contact with the caseworker supervisor at the Decatur Correctional Center and was aware that respondent had completed a parenting class, a “recovery from addict[ive thinking]
” seminar, a “lifestyle redirection” program and a substance abuse education treatment program.  Barnoski did not believe the courses were sufficient education for reunification with Shanna.  Further, Barnoski confirmed that respondent's incarceration made it difficult for her to take the needed services and utilize what she may have learned with Shanna.

Because respondent completed the services that were actually available to her in prison, she was deemed to be in compliance with her recommended tasks.  The prison, however, did not offer the types of services respondent needed to care for Shanna's special needs.

Barnoski also testified about respondent's visitation with Shanna.  Respondent had supervised visits with Shanna in prison until May 10, 2001.  Visits at the prison were deemed satisfactory.  From May 10, 2001, until September 2002, there were no visits at all between respondent and Shanna because the long trip to the prison was too difficult for Shanna due to her physical disabilities.  This determination was made by Barnoski's agency, after consultation with the court and the clinical therapists.  Respondent has never sent Shanna any letters, gifts or correspondence.  Since May 2001, respondent has never asked to see Shanna.

On December 12, 2002, after hearing all of the evidence presented, the trial court ruled that the State had proven, by clear and convincing evidence, that respondent was unfit on the following grounds: depravity, failure to make reasonable progress toward the return of the child and repeated incarceration which had prevented respondent from discharging her parental responsibilities for the child.  The trial court noted that respondent had her parental rights terminated on three of her other children.  The court also noted that respondent has five felony convictions for drug possession.  The court further noted that respondent had been incarcerated for most of Shanna's life and that, because of this, she was not able to participate in any of the services or training needed to care for Shanna's medical and developmental disabilities.  Thus, respondent was unable to make reasonable progress toward the return home of the minor.

The trial court conducted the best interests portion of the termination hearing immediately following its unfitness ruling on December 12, 2002.  The State again called Barnoski to testify.  At the time of the hearing, Shanna was living with her foster parent, Ms. R., and had lived with her since July 22, 2000, two months after her birth.  While Ms. R was at work, Shanna attended daycare.  Shanna had a lot of friends who also attended day care.  Shanna was receiving speech, occupational, developmental, and physical therapies.  Barnoski testified that Shanna had made significant progress in all her therapies while placed with her foster mother.

Shanna was very bonded with her foster mother, and Barnoski had witnessed acts of mutual affection between Shanna and her foster mother.  Shanna refers to her foster mother as “Mom.”  Barnoski testified further that the foster mother had adopted one of Shanna's older sisters, Shanice, who lives with them.  Shanna and Shanice have a typical sibling relationship; they get along well, are comfortable with each other, are protective of each other, and sometimes argue.  Shanna has visits with her other siblings who are also in DCFS custody.  The foster mother plans to continue sibling visits if she adopts Shanna.

Barnoski testified that, although Shanna has been told that respondent is her mother, Barnoski does not know if Shanna understands the relationship.  Shanna refers to respondent as Dorothy.

The trial court, after hearing all the testimony concerning Shanna's best interests, terminated respondent's parental rights.  Respondent now appeals the findings and orders of the trial court.

Respondent's first argument raised in this appeal is that a petition to terminate parental rights is defective on its face when it fails to specify that the parent's rights could be “permanently” lost.  Respondent cites section 2-13(4) of the Juvenile Court Act, which states as follows:

“(4) If termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under Section 2-29 is sought, the petition shall so state.  
If the petition includes this request, the prayer for relief shall clearly and obviously state that the parents could permanently lose their rights as a parent at this hearing
.” (Emphasis added.) 705 ILCS 405/2-13(4)(West 2002).

Respondent contends that because the State did not include the word “permanently” in its petition, the orders finding her unfit and terminating her parental rights must be reversed.  Respondent relies solely on the recent opinion in 
In re Andrea D.
, 336 Ill. App. 3d 335, 783 N.E.2d 681 (2003), to support her contention.  That case is no longer good law.  After the respondent filed her brief, the Illinois Supreme Court issued a supervisory order directing the appellate court to vacate its judgment and to reconsider its judgment, including: (1) whether the State's amended petition for termination of parental rights was included in the State's petition for adjudication of abuse or neglect; and (2) if not, whether the State's amended petition for termination of parental rights is governed by section 2-13(4)(705 ILCS 405/2-13(4)(West 2002)). See 
In re Andrea D.
, 336 Ill. App. 3d  335, 783 N.E.2d 681 (2003).

On remand, the appellate court noted that there are two separate mechanisms for requesting the termination of parental rights. 
In re Andrea D.
, 342 Ill. App. 233, 794 N.E.2d 1043 (2003).  The court's analysis there is well reasoned and consistent with the arguments now put forth by the State and the minor respondent here.  Thus, we agree with the minor respondent and the State that section 2-13(4) of the Juvenile Court Act does not govern the instant petition.

Under the Juvenile Court Act, the State may seek to terminate a respondent's parental rights at two different times during the course of the juvenile proceedings.  The first time is early on in the case, at the disposition hearing, when special circumstances exist. See 705 ILCS 405/2-21(5)(i) through (5)(iv) (West 2002).  When termination of parental rights is sought at the disposition hearing, the State files a single petition seeking to have the minor adjudicated neglected, abused or dependent pursuant to section 2-13 (705 ILCS 405/2-13 (West 2002)), and also containing a request for termination of parental rights and appointment of a guardian with power to consent to adoption pursuant to section 2-29(2) (705 ILCS 405/2-29(2)(West 2002)).  As noted earlier, when this occurs, section 2-13 provides that the prayer for relief must “clearly and obviously state that the parents could 
permanently
 lose their rights at this hearing.” (Emphasis added.)705 ILCS 405/2-13(4)(West 2002).

In the instant case, however, this expedited proceeding of terminating respondent's parental rights at the disposition hearing is 
not
 what occurred.  Here, respondent had her parental rights terminated later in the juvenile court proceedings, which is the more standard and customary method.  The petition in this case was filed after Shanna was made a ward.  Section 2-29, and not section 2-13, provides for this second way the State can terminate parental rights.  Section 2-29 states, in relevant part:

“(2) If a petition or motion alleges and the court finds that it is in the best interest of the minor that parental rights be terminated and the petition or motion requests that a guardian of the person be appointed and authorized to consent to the adoption of the minor, the court, with the consent of the parents, if living, or after finding, based upon clear and convincing evidence, that a parent is an unfit person as defined in Section 1 of the Adoption Act, may terminate parental rights and empower the guardian of the person of the minor, in the order appointing him or her as such guardian, to appear in court where any proceedings for the adoption of the minor may at any time be pending and to consent to the adoption. * * *  An order so empowering the guardian to consent to adoption deprives the parents of the minor of all legal rights as respects the minor and relieves them of all parental responsibility for him or her, and frees the minor from all obligations of maintenance and obedience to his or her natural parents.” 705 ILCS 405/2-29 (West 2002).

Section 2-29 does not have the same notice requirements as does section 2-13, because the two sections concern different types of proceedings.  A close reading and comparison of sections 2-13 and 2-29 of the Juvenile Court Act show that the legislature intended that the notice of permanent termination be included only in cases where the State seeks termination of parental rights before the entry of a dispositional order.  That section 2-29 concerns a different type of proceeding is highlighted by the fact that there are separate service requirements in section 2-29(2.1)
(footnote: 3) that do not appear in section 2-13, and language in section 2-13(4) which refers to the State's ability to proceed to termination proceedings by motion at any time after the entry of a dispositional order.  See 705 ILCS 405/2-13, 2-29 (West 2002).  Because the petition here was filed later in the case, the applicable section of the Juvenile Court Act is section 2-29.

More recently, this court reiterated the following:

“In expedited proceedings brought pursuant to section 2--13, where the petitioner seeks parental termination in an original juvenile wardship petition, the petitioner must provide explicit language to convey that the respondent parent stands to 'permanently' lose parental rights. 705 ILCS 405/2--13(4) (West 2000).  By contrast, where the State does not seek to terminate parental rights until after the minor has been adjudicated abused and made a ward of the court, the petition must be filed pursuant to section 2--29 of the Act (705 ILCS 405/2--29 (West 2000)). When the bifurcated procedure under section 2--29 applies, the petition need not include the explicit language that is required under section 2--13(4).” 
In re Diana L
, No. 3-02-0814, slip op. at 7 (August 29, 2003).

In the instant case, the State filed a termination petition seeking to terminate respondent's parental rights pursuant to section 2-29 of the Juvenile Court Act.  After the bifurcated termination hearing, respondent was found to be an unfit parent and the trial court subsequently found that it was in the best interests of Shanna to terminate respondent's parental rights pursuant to section 2-29. 705 ILCS 405/2-29 (West 2002).  Because section 2-13(4) of the Juvenile Court Act was meant to apply only when the termination proceedings follow directly after the adjudication hearing and concurrent with the disposition hearing, respondent is mistaken in arguing that the instant termination petition was defective for its failure to comply with the mandates of section 2-13(4).

 Respondent next contends that the trial court's findings that she was unfit, on three separate grounds, are against the manifest weight of the evidence.  The three grounds relied upon by the trial court in its order declaring respondent to be an unfit parent are those contained in subsections (i), (m) and (s) of section 1(D) of the Adoption Act, which states as follows:

“D. 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption.  The grounds of unfitness are any one or more of the following,

* * *   

(i) Depravity. * * *   

* * * 

There is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies under the laws of this State or any other state, or under federal law, or the criminal laws of any United States territory;  and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights.

* * *

(m) Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or (ii) to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act, or (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act. * * *

* * *

(s) The child is in the temporary custody or guardianship of the Department of Children and Family Services, the parent is incarcerated at the time the petition or motion for termination of parental rights is filed, the parent has been repeatedly incarcerated as a result of criminal convictions, and the parent's repeated incarceration has prevented the parent from discharging his or her parental responsibilities for the child.” 750 ILCS 50/1(D)(i),(D)(m), (D)(s)(West 2002).

This court has explained that the standard of review for parental unfitness is the following:

“Because the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of the reviewing court, a trial court's finding as to fitness is afforded great deference and will only be reversed on review where it is against the manifest weight of the evidence. [Citation.] A decision regarding parental fitness is against the manifest weight of the evidence where the opposite result is clearly the proper result. [Citation.]”
 In re Latifah P.
,
 
315 Ill. App. 3d 1122, 1128, 735 N.E.2d 1004, 1009 (2000).

One ground of unfitness found by the trial court was that respondent is depraved pursuant to the definition in the Adoption Act.  750 ILCS 50/1(D)(i)(West 2000).  The Illinois Supreme Court has defined depravity as “'an inherent deficiency of moral sense and rectitude.'” 
In re J.A.
, 316 Ill. App. 3d 553, 561, 736 N.E.2d 678, 685 (2000), quoting
 Stalder v. Stone
, 412 Ill. 488, 498, 107 N.E.2d 696 (1952).  The '[d]epravity of a parent may be shown by a series of acts or a course of conduct that indicates a moral deficiency and an inability to conform to accepted morality.[Citation.]'” 
In re S.H.
, 284 Ill. App. 3d 392, 396, 672 N.E.2d 403, 406 (1996), quoting

In re Dawn H
, 281 Ill. App. 3d  746, 757, 667 N.E.2d 485, 493 (1996).

 Under the Adoption Act, as noted earlier, the relevant section states:

“There is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies under the laws of this State or any other state, or under federal law, or the criminal laws of any United States territory;  and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights.” 750 ILCS 50/1(D)(West 2002).

Respondent has five felony convictions, two of them within the five years prior to the date the termination petition was filed, and the State established a rebuttable presumption of depravity.  Because the presumption is rebuttable, a parent is still able to present evidence showing that, despite her convictions, she is not depraved.
 In re J.A., 
316 Ill. App. 3d  553, 562, 736 N.E.2d 678, 686 ( 2000).  The question is whether respondent rebutted the presumption established by the State.

As the State notes, respondent chose not to present any evidence in rebuttal.  The only evidence presented was that respondent completed some basic services in prison, and she participated in visitation with Shanna.  Therefore, after considering all of the evidence, the trial court found respondent unfit based on her propensity to repeatedly commit drug-related felonies.

In making its ruling, the trial court stated:

“The [n]atural mother has had or had four other children in the foster care system before this minor.  The other four children were adjudged wards of the Court and placed in the guardianship of DCFS.  Three out of four of these children had termination of parental rights petitions filed and on November 10, 1999, approximately six months before the birth of the minor, Shanna, natural mother was found unfit and her parental rights were terminated. * * * Natural mother has five felony convictions for various possessions of controlled substance offenses. * * * Although these convictions are not considered to be violent offenses, they demonstrate a criminal lifestyle on the part of the natural mother and this lifestyle has prevented natural mother from providing for the financial, physical, and emotional needs of the minor Shanna.”

On appeal, respondent now contends that she rebutted the presumption of depravity and the trial court's finding of depravity was against the manifest weight of the evidence.

Respondent argues that her convictions “were all for drug offenses, which, while unlawful, do not necessarily demonstrate 'an inherent deficiency of moral sense and rectitude.'” The State strongly differs with “this self-serving analysis.”  As the State notes, respondent's crimes were not victimless offenses.  Using cocaine is illegal and subjecting one's child to having cocaine in his or her body is illegal and clearly immoral.  Respondent inflicted her drug problem and the effects of cocaine withdrawal on her unborn children.  Respondent has clearly shown an ongoing deficient moral sense by using cocaine while pregnant with 
four
 of her children, including Shanna.

Respondent compares her situation to the one that the respondent in 
In re J.A., 
316 Ill. App. 3d  553, 562, 736 N.E.2d 678, 686 ( 2000), found himself.  However, the parent in 
In re J.A. 
was not in prison, had completed numerous services and consistently visited with his child more frequently than the service plan suggested.  Moreover, the respondent's own child testified favorably on his behalf.  But respondent does not resemble the parent in 
In re J.A.
  Respondent did not have to take any affirmative action to have visits with Shanna; she merely had to wait for the caseworker to drive the child to her on visiting days.  This is not affirmative evidence of good conduct – it requires no real effort on the part of the parent.  Moreover, when respondent's visits with Shanna were suspended, she did not ask to see Shanna.  She did not even send cards, gifts, letters or any type of correspondence.  Receiving a few certificates for completing basic services in prison, while commendable, is not a difficult task and does not show rehabilitation.

Respondent has shown no evidence that she is rehabilitated; that can only be shown by a parent who leaves prison and maintains a lifestyle suitable for parenting children safely.  Here, respondent could not show this because the felonies which gave rise to the initial depravity presumption caused her to be incarcerated for a lengthy time period.  This was respondent's fault.  Respondent's incarceration prevented her from having visits with Shanna and receiving the necessary services aimed at helping Shanna's caregiver attend to her special needs.

We agree with the minor respondent's assertion that respondent resembles, not the parent in 
In re J.A.
 but, rather, the parent in 
In re T.S.
, 312 Ill. App. 3d 875, 728 N.E.2d 98 (2000).  In
 In re T.S.
, the depravity finding against the father was upheld because the evidence showed that previously he had “continued to commit crimes when he had three other children who presumably needed him.” 
In re T.S.
, 312 Ill. App. 3d at 878, 728 N.E.2d at 101.  Here, when Shanna was five days old and needed her mother, respondent was taken into custody once again and was not there for Shanna.  We conclude that the trial court's finding of depravity was not against the manifest weight of the evidence.

Where this court determines on review that the State has proved, by clear and convincing evidence, at least one statutory ground of parental unfitness, we need not consider any other findings of parental unfitness.
 In re M.J.
, 314 Ill. App. 3d  649, 655, 732 N.E.2d 790, 795 (2000).  Thus, we need not consider respondent's arguments regarding the additional findings of the trial court.

For the foregoing reasons, the judgment of the circuit court finding respondent unfit and terminating her parental rights is affirmed.

O'MARA FROSSARD, P.J., and SMITH, J., concur.

FOOTNOTES
1:
The State notes, in its brief, that DCFS first became involved with respondent and her family regarding a report of inadequate supervision of her oldest child, Sherry, who was born in 1984.

2:
Although the record indicates that Shanna has two foster parents, the testimony focused upon Shanna's relationship with the foster mother
.

3:
Section 2-29(2.1) provides:

“Notice to a parent who has appeared or been served with summons personally or by certified mail, and for whom an order of default has been entered on the petition for wardship and has not been set aside shall be provided in accordance with Supreme Court Rule 11.  Notice to a parent who was served by publication and for whom an order of default has been entered on the petition for wardship and has not been set aside shall be provided in accordance with Sections 2-15 and 2-16.” 705 ILCS 405/2-29(2.1)(West 2002).