NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (4th) 220369-U

NO. 4-22-0369

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 22, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.V., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 19JA85 |
| v. | ) | |
| Braxton S., | ) | Honorable |
| Respondent-Appellant). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the judgment of the trial court terminating respondent's parental rights because the trial court's fitness and best interest findings were not against the manifest weight of the evidence.

¶ 2   Respondent, Braxton S., is the father of K.V. (born July 2019). In March 2022, the trial court found respondent was an unfit parent under the Adoption Act (see 750 ILCS 50/1(D)(i) (West 2020)), and that termination of respondent's parental rights would be in K.V.'s best interest.

¶ 3   Respondent appeals, arguing that the trial court's fitness and best-interest determinations were against the manifest weight of the evidence. We disagree and affirm.

¶ 4                    I. BACKGROUND

¶ 5                    A. Procedural History

¶ 6   In September 2019, the State filed a petition for adjudication of wardship that

alleged that K.V. was neglected in that he lived in an environment that was injurious to his welfare while in the care of his mother, Dominique V., due to her (1) having "unresolved issues" of domestic violence and anger management and (2) allowing respondent to have access to the minor in violation of a Department of Children and Family Services (DCFS) "safety plan," which required contact with respondent to be supervised by DCFS. See 705 ILCS 405/2-3(1)(b) (West 2018). (We note that Dominique is not involved in this appeal.) The State also alleged that K.V.'s environment was injurious to his welfare when in the care of respondent due to respondent (1) having "unresolved issues of domestic violence and/or anger management" and (2) violating the DCFS "safety plan" by having unsupervised contact with K.V. *Id.*

¶ 7　　　　On the same day the petition was filed, the trial court conducted a shelter care hearing and placed temporary guardianship and custody of K.V. with the guardianship administrator of DCFS.

¶ 8　　　　In December 2019, the trial court conducted an adjudicatory hearing. Dominque stipulated to the allegations in the State's petition for adjudication of wardship. During the hearing, the State referred to an incident of domestic violence in June 2019, in which respondent battered Dominque, who was eight months pregnant at the time. (Prior to the hearing, respondent had pleaded guilty to criminal charges arising from that incident.) The trial court (1) accepted the stipulation and factual basis therefor and (2) adjudicated K.V. a neglected minor. The allegations in the State's petition against respondent were not addressed during the hearing.

¶ 9　　　　In May 2020, the trial court conducted a dispositional hearing and entered an order making K.V. a ward of the court. The court further found respondent unfit and unable for reasons other than financial circumstances alone to care for, protect, train, educate, supervise, or discipline the minor. The court also placed custody and guardianship of K.V. with the

guardianship administrator of DCFS. After the court issued its order, the court admonished respondent that he needed to cooperate with DCFS and complete services or he risked having his parental rights terminated.

¶ 10            In July 2020, respondent was arrested for domestic battery and remained in custody throughout the remainder of the proceedings.

¶ 11                              B. The Termination Proceedings

¶ 12            In December 2021, the State filed a petition to terminate respondent's parental rights. The State alleged respondent was an unfit parent within the meaning of the Adoption Act due to his (1) being depraved, (2) failing to "make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent," and (3) failing to "make reasonable progress toward the return of the child to the parent." See 750 ILCS 50/1(D)(i), (m)(i), (m)(ii) (West 2020).

¶ 13            In March 2022, the trial court conducted a bifurcated hearing on the State's motion to terminate respondent's parental rights.

¶ 14                              1. *The Parental Fitness Portion of the Hearing*

¶ 15            Regarding parental fitness, the State informed the court that it would be proceeding only on "the allegation that [respondent] is depraved" and moved to admit respondent's four certified felony convictions—namely, convictions for (1) unlawful delivery of a controlled substance within 1000 feet of a school in September 2016, (2) concealing the death of a person in September 2016, (3) domestic battery with two prior convictions in March 2021, and (4) aggravated battery of a child in March 2021, requiring him "to register under the [Murderer and] Violent Offender Against Youth [Registration] Act [(730 ILCS 154/1 *et seq.* (West 2020))]." Defendant objected only to the admission of the concealment conviction, which

the court overruled. The State also submitted a certified copy of conviction for misdemeanor domestic battery in August 2019, which the court admitted. The State then rested.

¶ 16    On direct examination, respondent testified that he expected to be released from prison in either June or July 2022. He further testified that before he was sentenced for his March 2021 felony offenses, he was engaging in the services that were offered to him and was able to complete parenting. However, while he was imprisoned, he was unable to engage in any other services due to the COVID-19 pandemic. Defendant stated that had the services been available to him, he would have continued to participate. Respondent recognized that he had made mistakes in the past, but he intended to put those mistakes behind him and be a good father to K.V once he was released from prison.

¶ 17    On cross-examination, respondent acknowledged that he had hit the two-and-a-half-year-old child of his then-girlfriend, Dominique, multiple times, leaving bruises when he committed the aggravated battery. (This child was not K.V.) He also acknowledged that (1) he was convicted of aggravated battery of Dominique around the same time and (2) after those two offenses, he committed domestic battery against a different girlfriend.

¶ 18    Following the parties' arguments, the trial court found that the State had proven the allegation of depravity. The court stated that respondent's four felony convictions, at least one of which was within five years of filing the petition to terminate parental rights, created a rebuttable presumption of depravity. The court further found that respondent did not rebut that presumption, in large part because he was "unable to stay out of trouble" and complete services. The court explained, "We may have desires and wishes, and we plan on doing things, but it's just that. Those are plans. Plans in and of themselves are not going to be sufficient enough to overcome the issue of depravity." The court then entered a written order finding respondent unfit

under section 1(D)(i) of the Adoption Act. 750 ILCS 50/1(D)(i) (West 2020).

¶ 19          2. *The Best-Interest Portion of the Termination Proceedings*

¶ 20          At the conclusion of the parental-fitness portion of the termination hearing, the trial court proceeded immediately to the best-interest portion of the termination hearing.

¶ 21          Melissa Dingeldine testified that she had been the foster mother of K.V. since October 2019. K.V. came into her care when he was two and a half months old. She was married and had two biological children, one who was 18 years old and the other 17 years old. Dingeldine's husband had been employed as a laborer for 18 years, and she was a stay-at-home mother. Dingeldine and her husband had been foster parents "for a little over six and a half years." She testified that when K.V. first came into her home, he had bacterial meningitis. While treating K.V. for the illness, Dingeldine and her husband "bonded so well" with K.V. She testified that K.V. was attached to the whole family and they would adopt him if adoption became a possibility. Dingeldine asserted that K.V. staying with her family was in his best interest because they were the only parents he had ever known and "he's loved so much" in their home. The State then rested.

¶ 22          Respondent did not present any new testimony, asking only that the trial court consider his former testimony during the fitness portion of the termination proceedings.

¶ 23          The trial court found that termination of respondent's parental rights was in K.V.'s best interest. The court stated it had considered all the statutory "best interest" factors (see 705 ILCS 405/1-3(4.05) (West 2020)) and discussed the factors it found particularly relevant.

¶ 24          The court began its oral decision by stating the following.

"[W]e have a child who is two years and 8 months of age. If I'm doing my math right, that's 32 months of age. While he had some what I would characterize as

- 5 -

very serious medical issues in the early stages of his life, that being bacterial meningitis, it does not appear he has developmental or special needs as we sit here today. [He] [a]ppears to be a happy, healthy child without significant needs other than for individuals to care for him."

¶ 25 The trial court noted that the case had been open for "a lengthy period of time," since September 2019, stating that K.V. "was placed in the current foster placement of Mr. and Mrs. Dingledine. *** He has been there for the last 29 months. So, has spent 29 out of 32 months of his life in the care of the Dingledines." The court stated that it believed respondent's testimony that he was "willing to make changes" and the fact that respondent would be released from prison in three to four months was in his favor regarding permanence. However, the court found Dingeldine's testimony compelling that her family had been in care of K.V. for nearly K.V.'s entire life.

¶ 26 The court explained the Dingeldines provided K.V. with "love, attachment, and a sense of being valued," which respondent did not provide because he was in prison. The court further stated that the Dingeldines were willing to adopt K.V. The trial court continued its discussion.

> "During the time that [respondent] was out, I commend him for doing the parenting classes. He was engaged in the substance abuse classes. But according to reports, before he was last incarcerated, his last drug screen was positive for cocaine, marijuana and methamphetamines. ***
>
> The domestic violence is extremely important given the convictions that have occurred. And [respondent] has to register as a violent offender. *** [Respondent] certainly needs to address those issues upon release. It takes a

lengthy period of time to complete those services. And that's time that I don't believe should be afforded when we're talking about [K.V.'s] best interest."

¶ 27 The trial court finished its discussion by pointing out that respondent "had the opportunity to do the services, make better choices," but chose not to. Instead, respondent became incarcerated during the proceedings. Accordingly, the court found that the State "established by clear and convincing evidence *** that it's in the best interest of [K.V.] that the parental rights be terminated."

¶ 28 This appeal followed.

¶ 29        II. ANALYSIS

¶ 30 Respondent appeals, arguing that the trial court's fitness and best-interest determinations were against the manifest weight of the evidence. We disagree and affirm.

¶ 31      A. The Trial Court's Fitness Finding

¶ 32 Respondent first argues that the trial court's determination that respondent was depraved was against the manifest weight of the evidence. Specifically, respondent argues that he rebutted the presumption of depravity by (1) showing that he completed the parenting class and (2) testifying that he planned to start his remaining domestic violence and substance abuse services upon his release from the Illinois Department of Corrections (DOC). We disagree.

¶ 33      1. *The Applicable Law and the Standard of Review*

¶ 34 The Act sets forth a two-stage process for the involuntary termination of parental rights. 705 ILCS 405/1-1 *et seq.* (West 2018). "Initially, the State must establish, by clear and convincing evidence, that the parent is unfit under any single ground set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018))." *In re Tr. A.*, 2020 IL App (2d) 200225, ¶ 32, 179 N.E.3d 329 (citing 705 ILCS 405/2-29(2), (4) (West 2018)).

¶ 35          One such ground is depravity, which is defined as "an inherent deficiency of moral sense and rectitude." (Internal quotation marks omitted.) *In re Shanna W.*, 343 Ill. App. 3d 1155, 1166, 799 N.E.2d 843, 850 (2003). Section 1(D)(i) of the Adoption Act provides, among other circumstances, a rebuttable presumption of depravity exists when "the parent has been criminally convicted of at least 3 felonies *** and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2018). The parent may rebut the presumption by presenting evidence showing that despite his convictions, he is not depraved. *In re Addison R.*, 2013 IL App (2d) 121318, ¶ 24, 989 N.E.2d 224.

¶ 36          Appellate courts will reverse a trial court's fitness determination only if it is against the manifest weight of the evidence. *Id.* "A trial court's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re N.B.*, 2019 IL App (2d) 180797, ¶ 30, 125 N.E.3d 444.

¶ 37                              2. *This Case*

¶ 38          In the present case, the trial court found respondent unfit on grounds of depravity for his four prior felony convictions. At the termination of parental rights hearing, the State presented certified copies of respondent's felony convictions from September 2016 and March 2021, involving drugs, dishonesty, and violence. Significantly, respondent committed domestic battery nine months after the shelter care hearing for K.V.

¶ 39          Respondent argues that because he completed the parenting classes and planned to complete other services, which he was unable to complete while incarcerated, upon his release from DOC, he "demonstrated not only a resetting of his moral compass but also that he took

- 8 -

concrete steps to create a different life with different goals." Accordingly, respondent argues he successfully rebutted the presumption of depravity.

¶ 40    Despite respondent's testimony that he could not complete the service plan while incarcerated because of COVID-19 and the implicit suggestion in that testimony that he should receive the benefit of the doubt, we note that respondent was in such a situation only because of his own decisions and violent actions. Respondent committed four felonies—one of which was a violent offense committed against a two-year-old child after juvenile proceedings were commenced against him—and had not completed his service plan. Accordingly, we agree with the trial court's judgment when it stated the following at the termination hearing:

> "[T]he offenses in this Court's eyes are more severe than the original offenses from 2016 for which he was incarcerated. *** We may have desires and wishes, and we plan on doing things, but it's just that. Those are plans. Plans in and of themselves are not going to be sufficient enough to overcome the issue of depravity."

¶ 41    Accordingly, we conclude that the trial court's finding that respondent was depraved was not against the manifest weight of the evidence

¶ 42                B. The Trial Court's Best Interest Finding

¶ 43                1. *The Applicable Law and the Standard of Review*

¶ 44    At the best-interest portion of termination proceedings, the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71, 145 N.E.3d 605. In reaching a best-interest determination, the trial court must consider, within the context of the child's age and developmental needs, the following factors:

"(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." (Internal quotation marks omitted.) *In re J.B.*, 2019 IL App (4th) 190537, ¶ 32, 147 N.E.3d 953.

See also 705 ILCS 405/1-3(4.05) (West 2020).

¶ 45        A reviewing court affords great deference to a trial court's best-interest finding because the trial court is in a superior position to view the witnesses and judge their credibility. *C.P.*, 2019 IL App (4th) 190420, ¶ 71. An appellate court "will not disturb the trial court's decision regarding a child's best interests *** unless it is against the manifest weight of the evidence." *Id.* ¶ 68. A best-interest determination is against the manifest weight of the evidence only when the opposite conclusion is clearly the proper result. *Id.*

¶ 46                                2. *This Case*

¶ 47        Respondent also argues that the trial court's best interest finding was against the manifest weight of the evidence because it placed (1) "excessive weight on *** K.V.'s sense of attachments," (2) "too much weight on permanence," and (3) "too little weight to a potential relationship with his biological father."

¶ 48        Respondent contends that when he is released from custody, he plans on building

the same attachments with K.V. that K.V. formed with his foster parents. Further, respondent insists that because K.V.'s "placement appears to be stable and healthy," the consideration of permanence through adoption is less important than the prospect of "reunification" with respondent.

¶ 49 We disagree and conclude that the trial court's finding termination was in K.V.'s best interest was well supported by the record.

¶ 50 The record shows that K.V. had been in the care of his foster parents since October 2019—29 out of 32 months of his life at the time of the termination hearing. Dingeldine testified that K.V. bonded with the family since they first brought him home and cared for him through his bout of bacterial meningitis at two and a half months old. Dingeldine's husband had stable employment as a laborer for 18 years, and she was a stay-at-home mother. She and her husband were determined to provide permanency through adoption if K.V. became available. Dingeldine testified that if something happened to her husband and herself, then their daughter, who had bonded with K.V., would take care of him. Further, at the time of the hearing, respondent was incarcerated and would continue to be incarcerated for several months. Especially important to the trial court's decision, and to ours, are respondent's convictions for (1) aggravated battery against a two-year-old child and (2) domestic battery.

¶ 51 Given the circumstances of the case—particularly, K.V.'s age, the length of the case, and respondent's violent behavior—the trial court's emphasis on K.V.'s sense of attachment and permanence was entirely appropriate, and we affirm its judgment terminating respondent's parental rights.

¶ 52                                    III. CONCLUSION

¶ 53 For the reasons stated, we affirm the trial court's judgment.

- 11 -

¶ 54	Affirmed.