NOTICE

Decision filed 11/02/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 210158-U

NO. 5-21-0158

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* M.C., S.S., C.S., and L.S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Jefferson County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 18-JA-114, 18-JA-115, |
| | ) | 18-JA-116, 18-JA-117 |
| | ) | |
| Michael S., | ) | Honorable |
| | ) | Evan L. Owens, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's judgment that the respondent was an unfit person with regard to the minor children S.S., C.S., and L.S., based upon its finding that the respondent failed to rebut the presumption of depravity, was not contrary to the manifest weight of the evidence. This court lacks jurisdiction to review the circuit court's judgment regarding the minor child M.C.

¶ 2    On May 27, 2021, the circuit court found the respondent, Michael S., to be an unfit person within the meaning of the Adoption Act (750 ILCS 50/1(D) (West 2020)) for the reasons of depravity (*id.* § 1(D)(i)) and failure to make reasonable progress towards the return of the minor children during any nine-month period following the adjudication of

1

neglected or abused minor (*id.* § 1(D)(m)(ii)). The circuit court found that the respondent failed to rebut the presumption of depravity created by the respondent's criminal history and that the respondent failed to make reasonable progress towards the return of the minor children during any nine-month period following the adjudication of abuse or neglect. Following a best-interest hearing, the circuit court terminated the respondent's parental rights regarding the minor children C.S.,[1] S.S.,[2] and L.S.[3]

¶ 3    Although the respondent filed a notice of appeal in the matter of In re M.C., a Minor, No. 18-JA-114, the respondent's only issue on appeal is whether the circuit court erred in finding the respondent an unfit person regarding the minor children C.S., S.S., and L.S. For the following reasons, we affirm the circuit court's judgments of May 27, 2021, finding that the respondent was an unfit person regarding the minor children C.S., S.S., and L.S., and further determine that this court does not have jurisdiction to review the circuit court's judgment of May 27, 2021, regarding the minor child M.C.[4]

¶ 4                                    I. BACKGROUND

¶ 5    The respondent is the natural father of the minor children S.S., C.S., and L.S. The legal father of the minor child M.C. did not appear in the circuit court and was defaulted. The minor children have the same natural mother and the natural mother's parental rights regarding the minor children are not at issue in this appeal.

---

[1] Born June 2011.

[2] Born October 2012.

[3] Born April 2015.

[4] Born May 2008.

2

¶ 6    On December 3, 2018, the State filed a juvenile petition[5] for adjudication of wardship (juvenile petition) pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2018)). The juvenile petition alleged that the minor children were neglected as defined in section 2-3(2)(i) of the Act (*id.* § 2-3(2)(i)) because the minor children's natural mother had inflicted physical injury upon one of the minor children by cutting the minor child with a knife and punching the minor child, causing impairment of the physical or emotional health of all of the minor children. The juvenile petition also alleged that the minor children were neglected as defined in the Act because the minor children were in an injurious environment due to their natural mother's serious mental health problems (*id.* § 2-3(1)(b)), substance abuse problems (*id.*), and homelessness (*id.* § 2-3(1)(a), (b)). Finally, the juvenile petition alleged that the minor children were in an injurious environment because their natural mother could not be located by the Department of Children and Family Services (DCFS) (*id.* § 2-3(1)(b)).

¶ 7    Because the respondent's issue on appeal relates solely to the minor children C.S., S.S., and L.S., in the interest of brevity, we will only set forth the background information related to the respondent and the minor children C.S., S.S., and L.S. From this point, our use of the term "minor children" will refer to C.S., S.S., and L.S., and where necessary for

---

[5]A juvenile petition was filed on behalf of M.C. in matter 18-JA-114; on behalf of S.S. in matter 18-JA-115; on behalf of C.S. in matter 18-JA-116; and on behalf of L.S. in matter 18-JA-117. The common law records do not contain a circuit court order consolidating the cases; however, the records indicate that the circuit court proceeded with the four separate cases as a single matter. As such, the majority of orders entered in these cases applied to all four cases without separate findings concerning each minor. Therefore, we will refer to the filings on behalf of the minor children collectively without separately indicating to which minor child the filing applied unless the filings differ, or such clarification is needed for our analysis.

our analysis, we will specifically identify information related to the matter of No. 18-JA-114 and the minor child M.C.

¶ 8     The juvenile petition filed on behalf of the minor children indicated that the respondent was the father of the minor children and was incarcerated within the Illinois Department of Corrections at the time the petition was filed. The circuit court entered a temporary custody order on December 3, 2018, which found that there was an immediate and urgent necessity to remove the minor children from the home, but the circuit court's order failed to address any award of temporary custody of the minor children. As such, on December 13, 2018, the circuit court entered an amended temporary custody order granting DCFS temporary custody of the minor children.

¶ 9     On January 14, 2019, the circuit court conducted a hearing on the State's juvenile petition. The respondent, along with counsel, was present at the hearing. The circuit court entered an agreed adjudicatory order that indicated that the respondent and the minor children's mother stipulated and agreed that the mother was homeless and unable to provide appropriate shelter causing the minor children to be in an injurious environment and that the minor children were abused or neglected as defined in section 2-3(1)(b) of the Act. 705 ILCS 405/2-3(1)(b) (West 2018). The circuit court also entered an agreed dispositional order the same day finding that the natural mother was unfit and unable to care for the minor children and that the respondent, for reasons other than financial circumstances alone, was unable to care for the minor children. As such, the circuit court adjudicated the minor children as neglected and placed the custody of the minor children with DCFS. The respondent was granted supervised visitation at the discretion of DCFS.

4

Finally, the circuit court ordered a court appointed special advocate (CASA) to represent the minor children and to conduct an intensive investigation of the minor children's situation.

¶ 10    On March 8, 2019, CASA filed a report to the circuit court. The CASA report of March 8, 2019, indicated that CASA was unable to contact the respondent. The next report to the circuit court was filed on April 8, 2019, by Caritas Family Solutions (Caritas) acting on behalf of DCFS. The April 8, 2019, Caritas report indicated that the respondent was incarcerated at the Pinckneyville Correctional Center and that a visit had been scheduled with the respondent and the minor children. The Caritas report, however, indicated that the correctional facility only allowed three visitors at one time and since the caseworker would count as one visitor, all three minor children could not visit the respondent at the same time. The caseworker further noted in the report that she believed that the minor children would not take the visit well because "they lean on each other during scaring or stressful times." The April 8, 2019, Caritas report also indicated that the respondent was scheduled for integrated assessment by telephone on April 9, 2019.

¶ 11    The next CASA report to the circuit court was filed on May 8, 2019. The May 8, 2019, CASA report indicated that the minor children were doing well in their foster home and recommended that the minor children's visits with the respondent be conducted at the courthouse instead of the correctional facility. On June 13, 2019, Caritas filed a report with the circuit court for the purpose of the circuit court's permanency hearing on June 17, 2019. The Caritas June 13, 2019, report indicated that the respondent's location of incarceration had changed to the Vienna Correctional Center. The report further indicated that the

respondent had been sent an integrated assessment to complete, but that the completed assessment had not been received by Caritas. As such, the report indicated that the respondent's service plan consisted of completing the integrated assessment, and since it had not been completed, respondent was rated unsatisfactory on his service plan. The June 13, 2019, Caritas report recommended that the circuit court determine a permanency goal of return home within 12 months.

¶ 12 On June 17, 2019, the circuit court conducted a permanency hearing and entered a permanency order the same day. The circuit court's permanency order indicated that the respondent had not made reasonable and substantial progress towards the return of the minor children and ordered that the minor children remain in the custody and guardianship of DCFS. The circuit court's June 17, 2019, permanency order also set a permanency goal of return home within 12 months.

¶ 13 CASA next filed a report to the circuit court on August 14, 2019, and Caritas filed a report to the circuit court on August 16, 2019. The CASA report to the circuit court did not address the respondent other than recommending that the respondent's visits with the minor children remain at the courthouse. The Caritas report of August 16, 2019, indicated that the respondent had completed the integrated assessment and that it was received by Caritas on July 19, 2019. The Caritas report also stated that a service plan was prepared and that the services the respondent was required to complete were the obtainment of adequate and stable housing; obtainment of legal and stable income; completion of a sex offender assessment and classes; participation and completion of mental health counseling; participation and completion of substance abuse counseling; and participation and

6

completion of parenting classes. The Caritas report further indicated that the respondent's service plan would be mailed to the respondent at the Vienna Correctional Center.

¶ 14 On January 8, 2020, CASA filed its next report to the circuit court. The CASA January 8, 2020, report indicated that the respondent's visits with the minor children had been occurring at the courthouse and that during the visits, the minor children were receptive to the respondent most of the time. The CASA report also indicated that the respondent had not engaged in any services and that the respondent was not making progress towards providing a stable living environment for the minor children.

¶ 15 Caritas also filed a report to the circuit court on January 8, 2020. The Caritas January 8, 2020, report indicated that the respondent had transferred to the Big Muddy River Correctional Center. The report further indicated that the respondent was rated unsatisfactory on his service plan. According to the Caritas report, a caseworker had spoken with the respondent's counselor at the Big Muddy River Correctional Center to determine whether the respondent had engaged in any services. The respondent's counselor indicated to the caseworker that the respondent had engaged in adult basic education classes and the sex offender program. The respondent's counselor also indicated that the respondent had not provided his service plan to the counselor nor had the respondent requested any services related to substance abuse, mental health, or parenting programs. The Caritas report states that the reason the respondent had requested a transfer to the Big Muddy River Correctional Center was to engage in his plan's services and that he had failed to do so. Further, the Caritas January 8, 2020, report indicated that the case had been open for over a year and that the respondent had not made substantial progress in his services or corrected the

7

conditions that brought the minor children into care. The report indicated that the following services needed to be completed or engaged in by the respondent: substance abuse; mental health; sex offender (engaged; not completed); stable income; adequate housing; and parenting. The Caritas January 8, 2020, report recommended to the circuit court that the permanency goal remain return home within 12 months.

¶ 16    On January 13, 2020, the circuit court entered its second permanency order in this matter. The circuit court's second permanency order indicated that the respondent had made a requested move to the Big Muddy River Correctional Center to engage in services, but that the respondent had not made reasonable and substantial progress towards returning the minor children home and had not made reasonable efforts toward returning the minor children home. As such, the circuit court continued DCFS's guardianship and custody of the minor children with a permanency goal of return home within 12 months.

¶ 17    On February 20, 2020, the circuit court received by mail directly from the respondent, a copy of the respondent's correctional facility activity card which indicated that the respondent was participating in a drug awareness class. On June 8, 2020, CASA again filed a report to the circuit court. The CASA June 8, 2020, report indicated that the minor children were moved to another foster placement due to the former foster parent being arrested for driving under the influence. The CASA report further indicated that the respondent had engaged in sex offender services through the prison system, but that the respondent was not making progress in creating a stable living situation for the minor children.

¶ 18    Caritas filed its next report to the circuit court on June 9, 2020. The Caritas June 9, 2020, report indicated that the respondent's service plan was rated unsatisfactory. According to the Caritas June 9, 2020, report, the caseworker had spoken with the respondent's counselor in April 2020 and the respondent had still not provided a copy of his service plan to his counselor nor had the respondent requested substance abuse, mental health, or parenting programs. The Caritas report also indicated that in March 2020, the prison discontinued visits and stopped trips outside of the prison due to COVID-19. Finally, the Caritas report of June 9, 2020, continued the recommended permanency goal of return home within 12 months.

¶ 19    On June 11, 2020, the circuit court conducted a hearing and entered its third permanency order in this matter. The respondent appeared by telephone at the hearing and indicated to the circuit court that he had enrolled and/or completed some classes and would provide the certificates to his counsel. The respondent stated to the circuit court that, "[a]ll I've got to do is the parenting, and I'll be done with it all of it then." Based on the respondent's representations, the circuit court orally held that the respondent had made some efforts, but had not made reasonable and substantial progress. As such, the circuit court continued the custody and guardianship of the minor children with DCFS. The circuit court's written permanency order of June 11, 2020, was consistent with the circuit court's oral findings at the hearing and continued the permanency goal of return home within 12 months.

¶ 20    The next Caritas report to the circuit court was filed on August 10, 2020. The Caritas August 10, 2020, report indicated that the minor children would have to be moved from

their current foster home due to a medical issue with one of the foster parents. The Caritas report also indicated that the respondent was still incarcerated at the Big Muddy River Correctional Center and that, to the caseworker's knowledge, the respondent had not made any further progress on his services. The recommended permanency goal of the Caritas August 10, 2020, report to the circuit court remained return home within 12 months.

¶ 21 CASA filed a report to the circuit court on September 10, 2020. The CASA September 10, 2020, report stated that the minor children had been placed together in a new foster home and that it was the minor children's fourth placement since coming into care. The CASA report also indicated that the respondent's discharge date was July 12, 2024, and that respondent's projected parole date was July 12, 2021. The report also stated that the respondent's attorney had indicated that the respondent was engaging in some services through the prison, but that the respondent's Caritas caseworker had indicated that the respondent had not made any further progress on his service plan.

¶ 22 On September 11, 2020, the State filed a motion for the termination of the respondent's parental rights and for the appointment of a guardian with power to consent to adoption of the minor children. The State's motion indicated that the minor children had been found to be neglected and were adjudicated wards of the court on January 14, 2019, and that a dispositional order was entered on the same day. The State's motion further alleged that the respondent was an unfit person as described within section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)), as follows:

"a. Failure to maintain a reasonable degree of interest, concern or responsibility as to the [minor children's] welfare. [750 ILCS 50/1D(b)]

10

b. Depravity. [750 ILCS 50/1D(i)]

c. Failure to make reasonable efforts to correct the conditions that were the basis for the removal of the [minor children] from the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act. [750 ILCS 50/1D(m)(i)]

d. Failure by a parent to make reasonable progress toward the return of the [minor children] to the parent during any 9[-]month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act. [750 ILCS 50/1D(m)(ii)]"

¶ 23 In a supplement to the motion for termination of parental rights and for appointment of guardian with power to consent to adoption, the State alleged that DCFS had established a service plan for the respondent as required under section 8.2 of the Abused and Neglected Child Reporting Act (325 ILCS 5/8.2 (West 2020)). The State also alleged that the respondent failed to make reasonable progress towards the return of the minor children during the following relevant periods:

"(a) The nine (9) month period that comprises January 15, 2019, through October 15, 2019; and/or

(b) The nine (9) month period that comprises October 15, 2019, through July 15, 2020."

11

As such, the State's motion for termination of parental rights and for appointment of guardian with power to consent to adoption requested that the circuit court forever and irrevocably terminate the respondent's parental and residual parental rights to the minor children and that DCFS be appointed guardian with power to consent to the adoption of the minor children.

¶ 24 On September 16, 2020, Caritas filed its next report to the circuit court. The Caritas report of September 16, 2020, indicated that the minor children were placed together in another foster home, and the report did not address the respondent other than in the recommendation section. In the recommendation section of the Caritas report, it was recommended that the respondent comply with all DCFS's and Caritas's recommendations. In addition, the report recommended that the permanency goal be changed to substitute care pending determination of termination of parental rights.

¶ 25 On October 26, 2020, the circuit court entered its fourth permanency order in this matter. The circuit court's fourth permanency order indicated that it found that the respondent had not made reasonable efforts towards the return of the minor children and had not made reasonable and substantial progress towards returning the minor children home. As such, the circuit court changed the permanency goal to substitute care pending determination of termination of parental rights.

¶ 26 CASA next filed a report to the circuit court on January 22, 2021. The CASA January 22, 2021, report indicated that the minor children had been in care for 785 days and that the respondent remained incarcerated with a projected parole date of May 13, 2021. The report indicated that CASA was unable to observe the respondent's parenting

skills due to respondent's incarceration during the duration of CASA's involvement in this matter, but further noted that the respondent failed to complete an agency approved parenting class. The CASA report also stated that the respondent's attorney had indicated that the respondent had completed some of his services, but that no documentation had been provided by either the respondent or his attorney to demonstrate the completion of any of the services. The CASA January 22, 2021, report also noted that the respondent was a repeat offender and had been sentenced multiple times, adding up to 20 years of incarceration sentences since 2000. As such, the CASA report recommended that the circuit court find the respondent an unfit person and after a best-interest hearing, that the permanency goal be change to adoption since the minor children had been in care for almost 26 months and deserved permanency.

¶ 27    On March 18, 2021, CASA filed another report to the circuit court indicating that the respondent was incarcerated with a projected parole date of April 12, 2021. The CASA March 18, 2021, report further stated that the respondent had still not provided any documentation to demonstrate that he had completed any of his services and again recommended to the circuit court that the respondent be found unfit and after a best-interest hearing, that the permanency goal be changed to adoption.

¶ 28    On March 23, 2021, Caritas filed an updated fitness report to the circuit court. The fitness report indicated that the respondent remained incarcerated at the Big Muddy Correctional Center. It also indicated that the respondent had 10 previous involvements with DCFS concerning the minor children and noted that the respondent was a registered sex offender with a long criminal history that included disorderly conduct, property

13

damage, theft, a weapons offence, and domestic battery. The updated Caritas report to the circuit court described the respondent's progress as follows:

"**Progress in Services from November 2018—May 1, 2019**

* * *

<u>**Michael [S.]:**</u>

**Complete IA:** Michael was sent an integrated questionnaire to fill out and send back in a self-addressed stamped envelope and had not done so during this time.

**Progress in Services from May 2, 2019—November 2019**

* * *

<u>**Michael [S.]:**</u>

**Complete IA:** Michael was sent an integrated questionnaire and he sent this back in August. Case worker mailed a copy of his service plan to him 09/23/19.

**Progress in Services from December 2019 to May 2020**

* * *

<u>**Michael [S.]:**</u> He was engaged in sex offender services while incarcerated and his participation is on going [*sic*]. He has reportedly completed a substance abuse service, but worker was not given proof. His attorney indicted that she had this proof.

**Services that need to be completed or engaged in once he is released from Prison:**

Substance Abuse—Assessment, random testing any positive test means reengagement in services.

14

Mental Health—Assessment

Sex Offender (engaged currently; not completed)—must produce previous evaluation or complete again.

Stable Income

Adequate Housing—must live on his own.

Parenting"

Based on the above, the March 23, 2021, Caritas updated report to the circuit court recommended that the respondent be found an unfit person.

¶ 29    On March 25, 2021, the circuit court conducted a hearing on the State's motion for the termination of the respondent's parental rights and for appointment of a guardian with power to consent to adoption. The first witness called by the State was Lindsie Pries. Pries testified that she was employed by Caritas and had been a foster care case manager for over four years. During that period, Pries stated that she had been involved with the minor children and identified the respondent as the father of the minor children.

¶ 30    Pries testified that she first became involved with the respondent and the minor children in December 2018, then the case was assigned to Caritas through DCFS. Pries testified that when she completed a service plan for the minor children's natural mother in May 2019, no service plan was completed for the respondent since he had not completed an integrated assessment. Pries stated that she had mailed an integrated assessment questionnaire to the respondent, but that the respondent did not complete and return the questionnaire until August 2019. Pries testified that the respondent was incarcerated during the entire period she was assigned as the caseworker in this matter and that the respondent

had moved prisons several times. As such, Pries stated that she had no means of knowing when the respondent received the integrated assessment questionnaire.

¶ 31    Pries testified that the respondent was given a service plan after he had completed the integrated assessment questionnaire, but that the respondent was rated unsatisfactory in most of his services in November 2019. In April 2020, Pries stated that the respondent was rated satisfactory for completing the integrated assessment questionnaire, participating in a sex offender course, and participating in a substance abuse course, but was rated unsatisfactory for stable income, mental health, and parenting classes. Pries testified that she remained involved in this matter until July 2020, and that from April 2020 through July 2020, the respondent had not made any notable progress.

¶ 32    Pries acknowledged that it was not possible for the respondent to obtain suitable housing or a stable income while incarcerated, but also noted that it was possible for respondent to complete sex offender courses, mental health, substance abuse and parenting services while incarcerated. Pries also acknowledged that she made no attempt to schedule an appointment to see the respondent at the prison and that she did not speak with the respondent's prison counselor about the availability to meet with the respondent to review his service plan. Pries testified, however, that she did contact the respondent's prison counselor by telephone to determine what services the respondent had engaged in. According to Pries's testimony, the respondent's prison counselor verbally informed her that the respondent had not engaged in any mental health services or parenting classes. Finally, Pries acknowledged that she had no evidence to indicate when, or if, the respondent

received the service plan but that she had spoken with the respondent about his service plan at the courthouse.

¶ 33    The State called Kendra Schuler as its next witness. Schuler testified that she had been employed by Caritas as a lead foster care worker for five years and had worked with the respondent and the minor children since November 2020. Schuler stated that she had met with the respondent and discussed the potential actions that could occur if the circuit court decided to terminate his parental rights and also what potential actions could occur if the circuit court decided not to terminate his parental rights. Schuler testified that the respondent had sex offender, substance abuse, and mental health services to complete. On the respondent's service plan dated November 6, 2020, Schuler testified that she had rated the respondent unsatisfactory because, although he was making efforts to complete some of the services, those efforts were not seen as substantial progress. Schuler acknowledged that the respondent was participating in sex offender counseling but testified that the respondent had not completed it. Schuler also testified that she had spoken with the respondent's counselor who indicated that the respondent would not be considered as having maximum therapeutic effect of the sex offender counseling and would require additional counseling.

¶ 34    Schuler further testified that the respondent had not engaged in any mental health counseling and that the respondent had completed a substance abuse course that consisted of a few hours which did not meet the requirements for his substance abuse service. Schuler acknowledged that the respondent had been previously rated satisfactory in substance abuse but stated that the rating was changed to unsatisfactory after documentation was

17

received that indicated that the respondent had only completed a few hours of treatment. As such, Schuler stated that respondent would be required to complete another substance abuse assessment and drug testing upon his release from prison.

¶ 35    Schuler testified that she had not received any documentation to indicate that the respondent had completed or engaged in a parenting class but noted that the respondent had informed her that he had attempted to engage in a parenting class but could not do so due to COVID. Schuler also testified that some of the respondent's service tasks, such as stable housing and legal income, could not be completed until after his release from prison. Schuler stated that the respondent appeared cooperative and that it further appeared that when an opportunity to engage in a service was available, the respondent did engage in the service.

¶ 36    Next, the State presented the circuit court with the respondent's criminal history and submitted certified copies of the respondent's convictions as exhibits which were admitted, without objection, by the circuit court. The exhibits demonstrated that the respondent had the following convictions:

> 2005-CF-213, Williamson County, Indecent solicitation of a child, a Class 3 felony.
>
> 2006-CF-7, Williamson County, Failure to register as a sex offender, a Class 4 felony.
>
> 2008-CF-139, Williamson County, Failure to register as a sex offender, a Class 2 felony.
>
> 2012-CF-85, Williamson County, Theft, a Class 3 felony.
>
> 2018-CF-232, Jefferson County, Failure to register as a sex offender, a Class 2 felony.

18

¶ 37   The State rested and the respondent was called and testified on his own behalf. The respondent testified that his current release date from incarceration was April 12, 2021, and that he planned on residing with his mother upon his release. The respondent stated that upon his release, he was willing to continue all of his assigned services. According to the respondent's testimony, he had undergone mental health evaluations in the past and had been compliant with his mental health providers including taking any prescribed medication. The respondent stated that he had attempted to get mental health treatment while in prison and had seen a licensed counselor three or four times a month while incarcerated.

¶ 38   The respondent also testified that he had completed a yearlong sex offender program, plus an additional 90 days at his own request, and that he was going to insure to register as a sex offender when he was released. The respondent stated that he had no history of substance abuse but was willing to undergo another substance abuse assessment and drug testing upon release. The respondent further testified that he had completed a parenting class, but that he was having difficulty getting a copy of the completion form. The respondent stated that he was incarcerated on or about August 9, 2018, and that at the time of his projected release, he would have been incarcerated for three years. The respondent stated that the last time he was able to see the minor children was about a year ago at the courthouse before COVID. The respondent presented no other evidence at the hearing.

¶ 39   The circuit court heard closing arguments from the parties and also heard from the minor children's guardian *ad litem*, Jason Barnhart. Barnhart informed the circuit court that

it was his belief that the respondent had maintained a reasonable degree of interest in the minor children and that the respondent had made efforts towards his service plan considering his incarceration, but that the respondent had not made reasonable progress within a nine-month period due to his incarceration which was "something he can't help, but something he also put himself in—a place he put himself in." Concerning depravity, Barnhart informed the circuit court as follows:

"I do support the State's argument that, by definition, [the respondent] meets the level of depravity. He does have at least three prior felony convictions, most recently, within five years, and as [the State] pointed out, one of those convictions is one of the specifically enumerated convictions that meets the definition of depravity.

I have not seen where [the respondent] has overcome that presumption. By my count, not only does he have the prior sex offense, but he also has three convictions for failure to register in some form or another, and that doesn't show, to me, that he is overcoming that depravity. In fact, he's sitting incarcerated today for unlawful failure to register."

Based on the above, Barnhart informed the circuit court that he supported a finding of unfitness regarding the respondent.

¶ 40    At the conclusion of the March 25, 2021, hearing, the circuit court made the following oral findings:

"[The respondent] has been working toward his services as best he can under his situation with the Department of Corrections. I didn't put [the respondent] in the

20

Department of Corrections as a judge, certainly, and whatever judge sentenced him didn't put him there, but [the respondent's] conduct put him there, and [the respondent] knows that.

However, he has done what he could do while he was in the Department of Corrections, according to the evidence that he asked to be transferred to a prison where he could better—where it was better suited for him to get some services. He has maintained a reasonable degree of interest and concern for these children. So I find that the State has not met their burden. With respect to paragraph 9A, I think the caselaw is clear and consistent that that type of effort is reasonable that [the respondent's] made.

Also, 9C, I think the efforts that he's made is reasonable in light of his circumstances. I don't think the State has met their burden as far as 9C, [the respondent]. I think you have made efforts from what I've seen since you've been here. I appreciate that.

I do not find that you've made reasonable progress, however, within both the period outlined in the supplement as marked—as filed in paragraph 9D. You've not made reasonable progress toward the return of the children home. These children are, in fact, farther away from you than they were when you started your incarceration. I don't find that you've made reasonable progress in both the nine month periods. I find they've met that burden by clear and convincing evidence.

I also find that they proved that you're depraved by clear and convincing evidence. By statutory, the type of offense, the aggravated criminal sexual abuse in

21

and of itself creates presumption of depravity which can be overcome by clear and convincing evidence. However, the subsequent convictions for unlawful failure to register as a sex offender, in particular, causes great concern for the Court. After being convicted of that offense, you have one—two of those unlawful failure to register as a sex offender convictions—actually, three. The last one being you are serving a sentence a sentence to the Department of Corrections now.

You also have additional felony convictions. I find that you are unfit and you're depraved as alleged in paragraph 9B of the motion for termination of parental rights."

¶ 41 The circuit court entered a written order on May 27, 2021, finding that the respondent was an unfit person as defined in the Adoption Act (750 ILCS 50/1(D) (West 2020)) for the reasons of depravity (*id.* § 1(D)(i)) and failure to make reasonable progress towards the return of the minor children during any nine-month period following the adjudication of neglected or abused (*id.* § 1(D)(i)). As such, the circuit court permanently and forever irrevocably terminated the respondent's parental rights and residual parental rights to the minor children. This court will not set forth any background information concerning the remaining circuit court's proceedings regarding the best interests of the minor children since it is not an issue within this appeal.

¶ 42 The respondent now appeals the circuit court's judgment finding him an unfit person arguing that he overcame the presumption of depravity and that the State failed to prove that the respondent had not made reasonable progress towards the return of the minor children during any nine-month period following the adjudication of abuse or neglect.

¶ 43                                    II. ANALYSIS

¶ 44    The first issue we must address is the respondent's appeal of the circuit court's May 27, 2021, judgment in No. 18-JA-114. The respondent's appellant brief caption does not list No. 18-JA-114, nor does the respondent raise any issue within his appellant brief concerning the minor child M.C.

¶ 45    The petition for adjudication of wardship filed by the State in No. 18-JA-114 does not name the respondent as a party and the respondent is not mentioned within the petition in any manner. The circuit court's May 27, 2021, judgment did list the respondent as a "Respondent(s)," but there was no amendment to the State's petition for adjudication or circuit court order adding the respondent as a party to the matter of No. 18-JA-114. Further, there were no findings within the circuit court's May 27, 2021, judgment in No. 18-JA-114 affecting any rights of the respondent.

¶ 46    Illinois Supreme Court Rule 303(a)(1) provides that a notice of appeal may be filed by "any party or by any attorney representing the party appealing." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). The respondent was not a "party or any attorney representing the party" in No. 18-JA-114. The filing of a notice of appeal is the jurisdictional step required to perfect an appeal. *In re Miller*, 396 Ill. App. 3d 910, 913 (2009). As such, the notice is appeal is both mandatory and jurisdictional. *Vines v. Village of Flossmoor*, 2017 IL App (1st) 163339, ¶ 9. Since the respondent was not a party in No. 18-JA-114, Rule 303(a)(1) does not permit the respondent to file a notice of appeal, and without a proper notice of appeal, this court does not have jurisdiction. Therefore, we find that this court lacks jurisdiction to review the circuit court's May 27, 2021, judgment in No. 18-JA-114 and

23

must dismiss the appeal in that matter. We will now proceed to the merits of the respondent's appeal concerning the minor children C.S., S.S., and L.S.

¶ 47    "A parent's right to raise his or her biological child is a fundamental liberty interest, and the involuntary termination of such right is a drastic measure." *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 28. The Act (705 ILCS 405/1-1 *et seq.* (West 2020)), along with the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2020)), governs the proceedings for the termination of parental rights. *In re D.F.*, 201 Ill. 2d 476, 494 (2002). The Act provides a two-stage process for the involuntary termination of parental rights. 705 ILCS 405/2-29(2) (West 2020). The State must first establish, by clear and convincing evidence, that the parent is an unfit person under one or more of the grounds of unfitness enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re D.T.*, 212 Ill. 2d 347, 352-53 (2004). Even if the State alleges more than one count of unfitness, only one count needs to be proven to find a parent unfit. *In re J.A.*, 316 Ill. App. 3d 553, 564 (2000). If the circuit court finds the parent unfit, the State must then show that termination of parental rights would serve the child's best interests. *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 28. A determination of parental unfitness involves factual findings and credibility assessments that the circuit court is in the best position to make, and a finding of unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re Tiffany M.*, 353 Ill. App. 3d 883, 889-90 (2004). "A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the determination is arbitrary, unreasonable, and not based on the evidence." *Id.* at 890.

¶ 48 In this appeal, the respondent raises no issues regarding the circuit court's finding that the termination of his parental rights was in the best interests of the minor children. The respondent argues, however, that the circuit court erred in finding the respondent an unfit person based upon its determination that the respondent had not rebutted the presumption of depravity and had not made reasonable progress towards the return of the minor children during any nine-month period following the adjudication of abuse or neglect. We will focus on the presumption of depravity in this matter as it is dispositive to the respondent's claim that the circuit court erred in finding him an unfit person.

¶ 49 Section 1(D)(i) of the Adoption Act provides for a presumption of depravity where the parent has been convicted of at least three felonies under the laws of this state and at least one of these convictions occurred within five years of the filing of the motion seeking termination of parental rights. 750 ILCS 50/1(D)(i) (West 2020). Where there is a presumption that the parent is depraved, the presumption is rebuttable if a parent is able to present clear and convincing evidence that, despite his convictions, he is not depraved. *Id.*; *In re J.A.*, 316 Ill. App. 3d 553, 562 (2000).

¶ 50 The Illinois Supreme Court has defined depravity as "an inherent deficiency of moral sense and rectitude." *Stalder v. Stone*, 412 Ill. 488, 498 (1952). The acts constituting depravity must be of sufficient duration and sufficient repetition to establish either an inability or unwellness to conform to accepted morality or to establish a deficiency in moral sense at the time the petition was filed. *In re J.A.*, 316 Ill. App. 3d at 561.

¶ 51 The respondent acknowledges that his criminal record gave rise to the presumption that he was depraved but argues that he overcame that presumption with evidence of his

completed services, his demonstrated commitment to rehabilitation, and his attitude toward his children along with his strong desire to be involved in their lives going forward. Although the respondent's criminal history began in 2005, the respondent argues that most of his criminal history occurred within a few years' time and were convictions for failing to register as a sex offender. As such, the respondent requests that this court consider the respondent's criminal history as one based on a lack of action and not on taking prohibited actions.

¶ 52    The respondent also argues that he not only completed a year-long sex offender treatment, but that he voluntarily continued the treatment for 90 days which indicated that he was not the same individual he was before the minor children were taken into care. The respondent further argues that his testimony stating that he would continue services and his level of compliance in meeting all requests of the caseworker demonstrated his rehabilitation and, as such, overcame the presumption of depravity his convictions raised.

¶ 53    Although the respondent argues that he overcame the presumption based on the evidence of his completed services and level of compliance while incarcerated, Illinois courts have held that a respondent's efforts in prison, while commendable, were not sufficient evidence of rehabilitation or lack of depravity. See *In re Addison R.*, 2013 IL App (2d) 121318, ¶ 30 (parent's efforts in prison, while commendable, were insufficient evidence of rehabilitation or lack of depravity); *In re Shanna W.*, 343 Ill. App. 3d 1155, 1167 (2003) ("Receiving a few certificates for completing basic services in prison, while commendable, is not a difficult task and does not show rehabilitation."); *In re A.M.*, 358

26

Ill. App. 3d 247, 254 (2005) ("completion of classes in prison, while *** commendable, does not show rehabilitation").

¶ 54    Even considering the respondent's criminal history as one based on a lack of action and not on taking prohibited actions, as the circuit court noted, the respondent was convicted three times of failing to register as a sex offender and those acts were of sufficient duration and repetition for the circuit court to determine either an inability or unwillingness by the respondent to conform to accepted morality. As such, we cannot find that the opposite conclusion is clearly evident or that the circuit court's determination was arbitrary, unreasonable, and not based on the evidence. Therefore, we find that the circuit court's finding that the respondent was an unfit person as defined in section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2020)) based upon the respondent's failure to rebut the presumption of depravity was not contrary to the manifest weight of the evidence.

¶ 55    As noted above, only one count of unfitness needed to be proven for the circuit court to find that respondent was an unfit person. *In re J.A.*, 316 Ill. App. 3d at 564. Because we have determined that the circuit court's finding that respondent was an unfit person based on depravity was not contrary to the manifest weight of the evidence, we do not need to address the respondent's issue of whether the circuit court erred in finding that the respondent had not made a reasonable progress toward the return home of the minor children during any nine-month period following the adjudication of neglected or abused minor.

¶ 56                                    III. CONCLUSION

¶ 57    Based on the above, we dismiss the respondent's appeal in No. 18-JA-114 for lack of jurisdiction. We affirm the circuit court's May 27, 2021, judgments in Nos. 18-JA-115, 18-JA-116, and 18-JA-117, finding that the circuit court's determination that the respondent failed to rebut the presumption of depravity and was an unfit person based upon depravity was supported by the manifest weight of the evidence.


¶ 58    No. 18-JA-114, Appeal dismissed.

¶ 59    No. 18-JA-115, Affirmed.

¶ 60    No. 18-JA-116, Affirmed.

¶ 61    No. 18-JA-117, Affirmed.