NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220736-U

NO. 4-22-0736

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 9, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.P., a Minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 20JA99 |
| v. | ) | |
| Joanna P., | ) | Honorable |
| Respondent-Appellant). | ) | Brian J. Goldrick, |
| | ) | Judge Presiding. |

---

JUSTICE DOHERTY delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's judgment finding respondent unfit pursuant to section 1(D) of the Adoption Act and terminating her parental rights is not against the manifest weight of the evidence.

¶ 2       Respondent, Joanna P., also known as Joanna E., appeals from the trial court's judgment finding her an unfit parent and terminating her parental rights as to her minor child, J.P. (born in 2020). Respondent contends that the court's fitness and best interest findings are against the manifest weight of the evidence. We affirm.

¶ 3                           I. BACKGROUND

¶ 4       Due to prior determinations that respondent was unfit, the Illinois Department of Children and Family Services (DCFS) immediately became involved when she gave birth to J.P.

In July 2020, the State filed a petition for adjudication of wardship, alleging J.P. was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)). The minor's biological father was a party to these proceedings in the trial court, but he voluntarily surrendered his rights to J.P. The petition alleged that J.P. was subjected to an injurious environment due to respondent's (1) unresolved substance abuse issues, (2) unresolved mental health issues, and (3) loss of parental rights to three of her other children following court proceedings. A shelter care hearing ensued, where the court found it necessary to remove J.P. from respondent's care. In October 2020, the trial court held an adjudication hearing. The court found respondent unfit, made the minor a ward of the court, and appointed DCFS as guardian.

¶ 5        In May 2022, the State filed a petition to terminate respondent's parental rights, alleging that she was depraved, failed to maintain a reasonable degree of interest in the minor, and failed to make reasonable progress toward the return of the minor between August 5, 2021, and May 5, 2022.

¶ 6                                A. Fitness Hearing

¶ 7        The matter proceeded to a hearing on the petition in July 2022. The State elected to proceed only on the claim that respondent was depraved, dismissing the other counts in the petition. Respondent was incarcerated and refused to appear at the hearing via Zoom.

¶ 8        Tanya Kutemeier, the caseworker from the Center for Youth and Family Solutions, testified that respondent, who also goes by Joanna E., participated in parenting classes and domestic violence classes prior to her incarceration, but there was no evidence she completed any of her services. Her compliance with the required drug screens was a rare occurrence.

¶ 9        The State submitted several certified convictions for respondent. People's exhibit No. 1 was a certified conviction in McLean County case No. 15-CF-484 in April 2015 for unlawful

possession of a controlled substance, a Class 4 felony. Respondent was sentenced to 24 months' probation and was subsequently unsuccessfully discharged from probation.

¶ 10       People's exhibit No. 2 was a certified conviction in McLean County case No. 15-CF-1462 from December 2015 for unlawful possession of a controlled substance, a Class 4 felony. Respondent was sentenced to 30 months' probation and 180 days in jail. She subsequently admitted to the allegations contained in a petition to revoke probation and was unsuccessfully discharged.

¶ 11       People's exhibit No. 3 was a certified conviction in McLean County case No. 16-CF-787 from July 2016 for conspiracy—financial institution robbery and disorderly conduct, a Class 2 and a Class 3 felony respectively. She was sentenced to 30 months' probation and 180 days' imprisonment. Subsequently, she admitted to the allegation in a petition to revoke probation and was unsuccessfully discharged.

¶ 12       People's exhibit No. 4 was a certified conviction in McLean County case No. 20-CF-1007 from September 2020 for unlawful possession of a controlled substance, a Class 4 felony. She was sentenced in May 2022 to four years' imprisonment.

¶ 13       People's exhibit No. 5 was a certified conviction in Will County case No. 20-CF-1030 from January 2020 for unlawful possession of a controlled substance, a Class 4 felony. She was sentenced to one year of imprisonment.

¶ 14       People's exhibit No. 6 was a certified conviction in McLean County case No. 15-CM-1980 from July 2015 for attempted forgery, a Class A misdemeanor. She was sentenced to 40 days' imprisonment.

¶ 15       The court took judicial notice of the orders and pleadings in the court file, and following arguments from the parties, ruled from the bench. The court noted the statutory

requirements to find a parent depraved and that a rebuttable presumption of depravity arises when the proof of three felony convictions is presented with at least one occurring within the last five years of the petition requesting termination of parental rights. The court stated that once some evidence is introduced by the respondent, the presumption evaporates, and the matter must be decided on the evidence presented. The court noted five felony convictions, with two of those convictions occurring within five years of the petition to terminate parental rights, establishing the presumption of depravity. However, respondent's counsel had presented some evidence in the matter to rebut the presumption, and the court proceeded to consider the matter as if the presumption did not exist.

¶ 16        In weighing the evidence, the court found respondent had difficulties in conforming to societal norms, as shown by her repeated involvement with authorities, numerous convictions, difficulties with substance abuse, and repeated unsuccessful discharges from probation. In reviewing the orders during the pendency of the case, the court found:

> "[Respondent] has remained unfit throughout the life of this case. At certain times the Court had found that she was making efforts toward the return home of [J.P.] but was never making reasonable and substantial progress towards the return home. That being that return home was not implemented or likely to occur in a relatively short period of time. So, while doing her best on services, based upon those orders, she wasn't making the progress necessary for the return home.

> When I weigh the evidence that has been presented in this case, I don't believe she has restored herself to a point where we can say she is not

depraved. Court believes that the State has met its burden by clear and convincing evidence, has established that [respondent] is depraved."

¶ 17                                  B. Best Interest Hearing

¶ 18        The matter proceeded to a best interest hearing following a short recess.

¶ 19        Freda H. testified. Freda H. was J.P.'s foster mother since J.P. was four days old and was the minor's only placement during the life of these proceedings. She was 71 years old with no health issues and worked at a local ministry. She performed "jail ministry" for over 30 years and that is where she met respondent. Once respondent found out she was pregnant with J.P., she asked Freda H. if she would accept placement for the minor when born, and Freda H. agreed. J.P. was comfortable in Freda H.'s home. J.P. was also familiar and bonded with Freda H.'s extended family, spending time with her relatives during holidays and weekends. Freda H. took J.P. to church with her, and the minor was familiar with the "church family." Freda H.'s bond with J.P. has only increased during the time she has cared for her. In describing J.P.'s bond with her, she explained that she had gone on vacation, and upon her return J.P. was "extra clingy," "experiencing a little separation anxiety," and she would "have to literally peel [J.P.] off of [her]" at daycare drop-offs until the minor recognized they were getting back into their routine.

¶ 20        Freda H. had put a significant amount of thought into adopting J.P., and if the option was available, she wished to give the minor permanence. While she was in great health, she had made a "backup plan" for the care of J.P. with her children in case something happened to her. If allowed to adopt J.P., she would be open to allowing respondent to contact J.P., explaining, "She should know her family." Having been a mother herself, Freda H. could only imagine how the separation would feel. Freda H. also planned to facilitate a relationship between J.P. and her

younger brother, who was placed with another foster family. She had taken J.P. to the younger brother's foster home so the two could spend time together.

¶ 21        The Center for Youth and Family Solutions submitted a best interest report. The report noted respondent's long history of substance abuse, specifically heroin, and an overdose in early 2020 while pregnant with J.P. In May 2022, respondent was incarcerated to serve a four-year sentence in the Illinois Department of Corrections. During the life of the case respondent continued to struggle with substance abuse, testing positive at various points for narcotics. She also struggled with mental health issues and failed to complete services to address them. Generally, respondent failed to engage in services, maintain contact with the caseworker, and was an inconsistent presence in J.P.'s life. The report reviewed each of the statutory best interest factors and concluded termination of respondent's parental rights was in J.P.'s best interest.

¶ 22        After taking judicial notice of the court file, the trial court found that respondent was struggling with a severe substance abuse issue and had not found the wherewithal to stay sober for extended periods of time. Respondent was incarcerated with a projected parole date of April 19, 2024. Respondent could not give J.P. permanency. J.P. was placed with Freda H. immediately after birth, and it was the only home she had ever known. Freda H. provided for all of the minor's needs. In reviewing the development of J.P.'s identity; her familial, cultural, and religious background and ties; her sense of attachments, including love, security, familiarity, continuity of affection; and the least disruptive placement alternative, the court found "all of that is with[Freda H.]" and favored termination. After considering all the best interest factors, the court determined it was in J.P.'s best interest to terminate respondent's parental rights.

¶ 23        This appeal followed.

¶ 24                                II. ANALYSIS

¶ 25                              A. Unfitness Finding

¶ 26          Section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2020)) provides for a two-step process to involuntarily terminate the parental rights of a minor. The State must first prove by clear and convincing evidence that the respondent is "unfit" as contemplated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re N.G.*, 2018 IL 121939, ¶ 28. One of the several grounds rendering respondent unfit is depravity. 750 ILCS 50/1(D)(i) (West 2020). Depravity does not have a statutory definition, but it has been defined by courts as "an inherent deficiency of moral sense and rectitude." (Internal quotation marks omitted.) *In re Donald A.G.*, 221 Ill. 2d 234, 240 (2006); *Stadler v. Stone*, 412 Ill. 488, 498 (1952). "Depravity must be shown to exist at the time of the petition to terminate parental rights, and the acts constituting depravity *** must be of sufficient duration and of sufficient repetition to establish a 'deficiency' in moral sense and either inability or an unwillingness to conform to accepted morality." (Internal quotation marks omitted.) *In re A.M.*, 358 Ill. App. 3d 247, 253 (2005).

¶ 27          The Adoption Act provides for "a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies *** and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2020). The presumption does not shift the burden of proof and the presumption ceases to operate once sufficient evidence is entered into the record. *In re J.A.*, 316 Ill. App. 3d 553, 562-63 (2000). Similar to other rebuttable presumptions, the quantum of evidence required to overcome the presumption once established is not fixed, but instead depends on the strength of the evidence presented. See *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 463 (1983). Even once the presumption is rebutted, the State may establish the depravity of a parent by proving "a course of conduct that indicates a moral deficiency

and an inability to conform to accepted moral standards." *In re J'America B.*, 346 Ill. App. 3d 1034, 1047 (2004).

¶ 28 The trial court is in a superior position to observe witnesses and evaluate their credibility. *In re D.F.*, 201 Ill. 2d 476, 498-99 (2002). Accordingly, the court's findings regarding parental unfitness are afforded great deference and will not be reversed unless against the manifest weight of the evidence. *Id.* "A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident." *In re C.N.*, 196 Ill. 2d 181, 208 (2001).

¶ 29 Respondent claims that, other than her prior convictions, the State presented no other evidence she was depraved. The trial court found that respondent rebutted the presumption by participating in a parenting class and domestic violence counseling but that the State still carried its burden in proving that respondent was depraved. Essentially, respondent contends that her mere participation in parenting and domestic violence classes was sufficient to establish her rehabilitation. We disagree.

¶ 30 The State presented numerous felony convictions to the court, two occurring within the last two years of this matter. The majority of the convictions concerned the unlawful possession of a controlled substance. Of course, this echoes respondent's severe and unaddressed substance abuse issue. Most of the convictions were followed by probation that was subsequently revoked due to respondent's inability to conform to its terms. It is apparent that respondent's addiction prevents her from conforming to societal norms. In addition, there was a misdemeanor conviction submitted for forgery. Further, there was evidence of failed or missed drug screens during the pendency of this case. Moreover, the habit of committing crimes, resulting in respondent's absence from J.P.'s and her other children's lives, is itself independent evidence of depravity. *In re T.S.*, 312 Ill. App. 3d 875, 878 (2000).

¶ 31　　　　While there was evidence respondent participated in some services, she failed to complete any. In addition to the numerous criminal convictions, it is evident that respondent never engaged in services meant to address the crux of her depravity: her substance abuse. While these efforts are commendable, they fail to demonstrate rehabilitation. See *In re A.M.*, 358 Ill. App. 3d 247, 254 (2005).

¶ 32　　　　The State proved by clear and convincing evidence that respondent suffered from a deficiency in moral sense and either an inability or an unwillingness to conform her conduct to accepted morality.

¶ 33　　　　　　　　　　　　B. Best Interest Finding

¶ 34　　　　"If the trial court finds the parent to be unfit, the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). The State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71. The preponderance of the evidence standard is a less stringent standard than proof beyond a reasonable doubt; it is less stringent than even the intermediate standard of clear and convincing evidence. *In re K.P.*, 2020 IL App (3d) 190709, ¶ 41 (citing *People v. Peterson*, 2017 IL 120331, ¶ 37).

¶ 35　　　　In reaching a best interest determination, the trial court must consider, within the context of the child's age and developmental needs, the following factors:

　　　　　"(1) [T]he child's physical safety and welfare; (2) the development of the
　　　　　child's identity; (3) the child's familial, cultural[,] and religious background
　　　　　and ties; (4) the child's sense of attachments, including love, security,
　　　　　familiarity, continuity of affection, and the least disruptive placement

alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." (Internal quotation marks omitted.) *In re J.B.*, 2019 IL App (4th) 190537, ¶ 32.

See also 705 ILCS 405/1-3(4.05) (West 2020).

¶ 36 We afford great deference to the trial court's best interest finding due to the court's superior position in viewing the witnesses and judging their credibility. *J.B.*, 2019 IL App (4th) 190537, ¶ 33. We will not disturb the trial court's judgment at this stage unless it is against the manifest weight of the evidence. *Id.*

¶ 37 Respondent argues that the trial court placed undue emphasis on several factors, and she effectively asks this court to reweigh the best interest factors. Specifically, respondent argues that the court (1) "placed excessive weight on the [minor's] sense of attachments," (2) "placed too much weight on permanence for the [minor]," and (3) "gave too little weight to a potential relationship with [respondent]."

¶ 38 Despite respondent's arguments, it is not a function of this court to reweigh the best interest factors or to substitute our judgment for that of the trial court. *In re S.M.*, 314 Ill. App. 3d 682, 687 (2000). The record reveals that the trial court carefully and methodically considered all the best interest factors.

¶ 39 Respondent further argues that when she is released from custody, she plans to build the same attachments with J.P. that Freda H. currently enjoys. Moreover, because J.P. enjoys

a stable and healthy placement, the importance of a permanent parental solution was mitigated. These arguments fail to show that the trial court's best interest finding is against the manifest weight of the evidence.

¶ 40 The record shows that J.P. has been in the care of Freda H. essentially since birth. Two years after removal, respondent was no closer to having the minor returned home in the foreseeable future. The court noted that respondent's projected parole date was April 19, 2024. At that time J.P. would be almost four years old. The minor needs permanence, and Freda H. was able to provide it. Freda H. even has developed a contingency plan among her biological children to care for J.P. if something unfortunate were to happen to her. The evidence demonstrated J.P. was having all her needs met. Freda H. involved her in the community by enrolling her in daycare and having her attend Freda H.'s church, giving J.P. interaction with Freda H.'s "church family." Freda H. and J.P. are bonded, and it is clear that in light of J.P.'s sense of attachment—including love, security, familiarity, and continuity of affection—the least disruptive placement alternative, and the development of her identity all weigh in favor of terminating respondent's parental rights. The trial court's best interest finding is not against the manifest weight of the evidence.

¶ 41 III. CONCLUSION

¶ 42 For the reasons stated, we affirm the trial court's judgment.

¶ 43 Affirmed.